SANDY RIVER RAILROAD Co. in equity, *vs.* PHILIP H. STUBBS.

Franklin. Opinion December 14, 1885.

*Railroads. Lands taken for. Directors. Trusts.*

A director of a railroad company, is, in equity, its trustee ; and notwithstanding this fiduciary relation, his purchase of land across and upon a part of

which he anticipates the track may be located, and buildings for railroad purposes erected, can not necessarily be considered, at the option of the company, to have been made in trust for it.

Thus where the directors of the company were unable to make satisfactory terms with the owner of land for a right of way for a proposed change of the location of its track, and the defendant who was one of the directors purchased, with his own funds, without any suggestion of his associates, what was deemed much more land than was needed by the company, and immediately thereupon made a full report of his negotiations to his associates who at once repudiated the transaction as made on the defendant's individual responsibility and not in behalf of the company, which he confirmed; but subsequently the track was located and the buildings were erected across and upon a portion of the land; and committees appointed, at various times, to settle the land damages with the defendant, agreed with him upon and staked out the quantity of land needed and the compensation therefor, but failed to finally adjust the matter because the defendant would only convey the use for railroad purposes and not the fee of the land; and then, more than three and one-half years after the taking of the land, claimed for the first time to the defendant, that he held the whole land in trust for the company. In a bill praying for a conveyance of the whole land to the company on its payment of the consideration paid by the defendant with interest and expenses. *Held,* that the bill cannot be sustained.

ON APPEAL.

Bill in equity containing the following allegations :

" 1st. That said company was duly organized on the eighth day of April, A. D. 1879, for the purpose of building and operating a railroad from Farmington to Phillips.

" 2d. That Abner Toothaker, Nathaniel B. Beal, William F. Fuller, Philip H. Stubbs, and Stephen Morrell were duly elected directors of said company at a legal meeting of the stockholders of said company, holden at Strong, on the eighth day of April, A. D. 1879, were duly qualified, and entered upon the discharge of their duty, and continued to act in said capacity until the next annual meeting of said company, which was held at Strong, on the seventeenth day of March, A. D. 1880.

" 3d. That the said directors, in the discharge of their duties, were endeavoring to settle the damages of the various owners of land over which said railroad was to be built, and to purchase land at different points on the line of said road on which to build station houses and other buildings necessary for operating said railroad.

" 4th. That said directors in the discharge of their duties as aforesaid, had obtained a deed of certain land on which to build said road, from one Elias H. Porter, of Strong, and that said deed was duly delivered to said company, and that the company by virtue thereof became the owner in fee of the land described in said deed.

" 5th. That subsequently to the delivery of said deed, the company desired to obtain more land of said Elias H. Porter, and other land, for the purpose of erecting a station house and other necessary buildings in Strong village.

" 6th. That for the purpose of conferring with said Elias H. Porter in relation to the purchase of such other and additional land, the directors of said company, to wit: Abner Toothaker, Nathaniel B. Beal, William F. Fuller, Philip H. Stubbs, and Stephen Morrell, on the —— day of September, A. D. 1879, assembled at the office of Philip H. Stubbs, in said Strong, and there met and conferred with said Elias H. Porter, in relation to the purchase of such land as was required for the use of said company.

" 7th. That while the negotiation for the purchase of such land between said directors and the said Elias H. Porter was in progress, said Philip H. Stubbs, who was then and there one of said directors, asked the said Elias H. Porter to retire for a few minutes from the conference, that he might go with him and view the land, which was only a short distance from the place in which the board of directors was assembled; that after a short time said Stubbs returned and informed his fellow directors that he had succeeded in purchasing the required land of said Elias H. Porter, and they would consequently have no further trouble in relation thereto; and the [directors, relying upon this report of director Stubbs, and believing the business for which they had assembled to be fully accomplished, thereupon adjourned.

" 8th. That the directors of said company, relying upon said report of said Stubbs, and believing that the required land of said Porter had been purchased by said company, by its director and agent, Philip H. Stubbs, proceeded to change the location

of their road in said Strong village, from the land on which it had previously been located, and of which they had a deed, to the land they supposed they had purchased through their director, P. H. Stubbs, and also proceeded to erect thereon a railway station, and other buildings necessary for the convenient operation of said railroad at Strong village.

"9th. That in fact said Philip H. Stubbs purchased said land for which the directors of said railroad company were negotiating, at the time he requested said Porter to withdraw from said conference, and took a deed thereof to himself, and paid to said Porter for and in consideration of the deed of said land to himself, the sum of five hundred dollars of his own money, and also surrendered to said Elias H. Porter the deed which said Porter had previously given to said Sandy River Railroad Company.

"10th. That after the location of said road had been changed from the land of which said railroad company had a deed, to the land which they supposed they had purchased of Elias H. Porter, through their director, Philip H. Stubbs, and after they had caused a railway station and other buildings necessary for the convenient operation of said railroad at Strong village, to be erected thereon, they learned that said Stubbs had had said land conveyed to himself, and not to said railroad company — or to himself for their benefit (see amendment of declaration) — as they believed and as they had been led to believe by the words and acts of said Stubbs.

"11th. That they, thereupon, requested said Stubbs to convey to said railroad company the said land, and offered and tendered to him all the money he had paid therefor, together with interest, charges, and expenses, to wit: They tendered to him on the twenty-eighth day of July, A. D. 1883, the sum of seven hundred and forty-two dollars, and demanded of him a sufficient deed of the real estate conveyed to him by Elias H. Porter, as and under the circumstances aforesaid.

"But the said Philip H. Stubbs utterly refused, and still neglects and refuses, to convey said land to said company.

"Whereupon the plaintiffs, believing that the said Stubbs has

not acted in good faith in this transaction, and that the company is entitled to the benefit of any purchase made of land of said Elias H. Porter, as above set forth, pray this honorable court to make and pass a decree, requiring the said Philip H. Stubbs to execute a good and sufficient deed of the land conveyed to him by said Elias H. Porter, as above set forth, and your orators hereby offer to pay over to said Stubbs, said sum of seven hundred and forty-two dollars, on delivery of said deed. "

The facts, as found by the court, are stated in the opinion.

*S. Clifford Belcher*, for the plaintiff, cited: 3 Pom. Eq. § 1089, *et seq.*; *E. & N. A. R'y Co.* v. *Poor*, 59 Maine, 277; *Cox* v. *John*, 6 C. L. Journal, 389; 12 Am. Dec. 412; *Ryden* v. *Jones*, 1 Hawks, (N. C.) 497, (9 Am. Dec. 660); *Scribner* v. *Adams*, 73 Maine, 541; 1 Green. Cruise, 264, note; 1 Story, Eq. Jur. § 322, *et seq.*

*J. P. Swasey*, for the defendant.

VIRGIN, J. The complainant brings up this case by appeal from the decree of the presiding justice, who heard it on bill, answer and proof.

Its claim, briefly stated, is — that the defendant, as one of its directors and for its benefit, purchased certain land in the village of Strong, but took the conveyance to himself, that the company soon afterward located its track, erected its station house, water tank and wood-shed upon a portion of it; that the defendant holds the title to the whole land thus purchased in trust for the complainant; wherefore it prays that on payment to him of the consideration, interest and expenses, he be decreed to convey to the company.

The defendant denies that he acted as director *in hac re*, and claims that the company being unable to obtain from the owner a right of way across the land upon the terms it proposed, he thereupon, without its direction, suggestion or knowledge, purchased on his own personal responsibility, from the owner, much more land than was necessary for the company's use, to the end that it might have so much of it as was necessary for railroad

purposes, for a reasonable consideration, or for such a proportion of the whole consideration as the portion of the land needed and taken by the company should bear to the whole land.

Several of the allegations in the bill are not proved in the sense in which they are set out, and some of them — especially in paragraphs four and nine — are disproved. And without unprofitably extending this opinion by an analysis of the testimony, it is sufficient to say that the material facts, established by a fair preponderance of it, are these :

The company was organized in April, 1879. Prior to the following August it obtained by parol gift a right of way twenty feet in width — not including any land for its buildings — and located its track across land of one Porter, in the village of Strong. Some of its citizens and the two directors including the defendant, resident therein, expressed some dissatisfaction thereto, preferring a route farther east and nearer to the business center of the village. Whereupon, at the latter date mentioned, five of the seven directors together with Porter assembled at the defendant's office to consider the proposed change of location which if made would also cross the land of Porter. A majority of the directors not residing in Strong being at least indifferent to the change, strenuously contended that it ought not to be made unless Porter would give this right of way, land damages for railroad buildings being inevitable on either route. But after a whole afternoon's importunate urging he absolutely refused to accede, and the projected change was therefore substantially abandoned. Thereupon the defendant took Porter out upon the land, pointed out the probable proposed route and there made renewed but fruitless efforts to persuade him to give the right of way. Then the defendant proposed to personally purchase his entire field, which proposition Porter peremptorily declined to entertain. As the last resort, the defendant staked out some two and one-half acres of it, comprising much more land than they anticipated the company might need for all its purposes, but across which the new track might probably go ; and after considerable bantering, Porter agreed to take five hundred dollars therefor, provided the defendant would erect

and maintain a fence against the remainder of the lot, and the defendant closed the trade. Whereupon they returned to the office where the defendant made a detailed report of his negotiations with Porter, adding in substance that having purchased the land, he could accommodate the company with a right of way, and with as much land as was necessary if they wished to locate there. But the directors expressly repudiated all participation in the defendant's purchase, alleging among other reasons that land there was not worth any such price and declaring that he must understand that it was his own personal trade — to which he readily and expressly assented — whereupon they separated.

A few days thereafter, the defendant paid Porter the five hundred dollars, received his deed containing the fencing clause and caused it to be recorded and subsequently built the fence. There was no other consideration for the land thus conveyed.

In September the location was changed. In November and December the station house and water-tank were erected, followed by the running of the trains and the erection of the wood-shed.

Subsequently the parties had several conferences in relation to settling the damages for the land taken for the track and buildings. Still later two committees were chosen for the same purpose. They staked out so much of the land as was deemed necessary for railroad purposes, agreed upon the price, but failed to conclude a final adjustment because the defendant declined to convey the fee instead of the use of the land so long as it should be used for railroad purposes. Thus the matter stood, until February, 1883, when the defendant, for the first time during the three and one-half years of his ownership of the land, received notice that the company claimed he held the whole land in trust simply. He had held the offices of director and clerk of the company from the time of its organization to November, 1883, attended its meetings, and never before received any intimation of such a claim.

Without questioning the rule so clearly recognized in this court (*E. & N. A. R. Co.* v. *Poor*, 59 Maine, 277), as well as

in many others, that his directorship constituted the defendant, in law, an agent, and in equity a *quasi* trustee at least, and thereby established his fiduciary character; fully appreciating the foundation of the important doctrine by which equity requires that the confidence imposed in a trustee shall not be abused for his personal interests; keeping constantly in mind the jealousy with which courts scan the dealings of a trustee with respect to matters involved in the trust; holding with other courts that the *cestui que trust's* right of avoidance does not necessarily depend upon the fraud or *bona fides* of the trustee (*Duncomb* v. *N. Y. H. & N. R. R. Co.* 84 N. Y. 199; and still we are of opinion that none of the cases or the principles announced therein invoked by the complainant, nor any of the numerous others upon the subject which we have carefully examined would warrant us in granting the prayer of the complainant.

The defendant zealously worked for the interests of his principal by seeking to change the location so as thereby to accommodate the business interests of the community in which one of its intermediate stations was to be located. This result had failed to be brought about by the other directors. As a last resort he personally purchased what was then considered two or three times more land than he deemed the needs of the road required for public use, not as a speculation from which he might derive secret profits (Thomp. Liab. Off. 360, § 8 and cases in *notis*) but to facilitate the desired object. He did not deal with the company's funds, but paid his own without any assurance or intimation that the company would ever take any of the land. He did not deal with the company's property. He did nothing which he concealed from its knowledge, but frankly and promptly disclosed the whole transaction and put his deed upon the public registry, and his acts were repudiated. He did no act in the premises in anywise inconsistent with the interests of his *cestui que trust*, nor acquired for himself any interest adverse to his company in any sense contemplated by the rules of equity governing trustees and *cestius que trustent*. *McClanahan* v. *Henderson*, 12 Am. Dec. 412; *Van Epps* v. *Van Epps*, 9 Paige, 238, 241.

There was no opportunity for a breach of trust, the defendant standing alone against the other six directors who had a full knowledge of all the facts with full control of the question of change of location. If they concluded to make the change the company could only "take and hold the land for public use," R. S., c. 51, § 14. It had no right to insist upon having the fee. If the parties could not agree upon the land damages, the statute furnished a tribunal to adjust that question. R. S., 1871, c. 51, § 6. If they could not agree as to the "necessity or extent of the land to be taken," their remedy was plain and adequate. R. S., 1871, c. 51, § 13.

But the alleged necessities for the whole land was evidently an afterthought on the part of the complainant. Its whole conduct down to February, 1883, points in that direction, the staking out of the land appropriated leaving a portion as not needed, the agreed price based upon a fair proportion of the whole consideration paid by the defendant, the three reports of outstanding liabilities for land damages including the defendant's claim, and the long — more than three and one-half years — acquiescence of the company all afford ample proof that the company then took a new departure.

*Decree affirmed. Bill dismissed with costs.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.