THE MODERN WOODMEN OF AMERICA V. JOSEPH GERDOM *et ux.*

No. 15,229.    (94 Pac. 788.)

SYLLABUS BY THE COURT.

1. DEATH — *Seven Years' Unexplained Absence — Presumption.* The rules of law stated on the former hearing of this case are reaffirmed.

2. ——— *Evidence.* The evidence of additional inquiries for the missing man, the widely extended publication of an offer of reward for information concerning him, the notoriety of this prolonged litigation, and the further lapse of time, were proper matters for consideration in determining whether death should be presumed.

3. ——— *Conclusive Proof Not Required.* While the parents were bound to exercise reasonable diligence in their search, they were not required to prove conclusively that he was dead; they were only bound to produce such evidence as would fairly lead to this presumption.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed March 7, 1908. Affirmed.

*Truman Plantz,* and *D. C. Tillotson,* for plaintiff in error.

*Webb McNall,* and *Quinton & Quinton,* for defendants in error.

26—77 KAN.

The opinion of the court was delivered by

BENSON, J.: This action is again before this court for review. (*Modern Woodmen v. Gerdom*, 72 Kan. 391, 82 Pac. 1100, 2 L. R. A., n. s., 809.) On the second trial additional evidence was heard, and the plaintiffs, Joseph Gerdom and wife, again recovered. The defendant insists that the evidence is still insufficient, and asks for a reversal.

The evidence shows that John B. Gerdom, an unmarried man about thirty years of age, working in a newspaper office at Topeka, and residing with his parents in that city, left his home on October 14, 1895, to go to California. He was a member of the defendant society, which had issued to him a benefit certificate in 1890, which was payable to his parents, the plaintiffs, and which was in full force. Soon after leaving his home he wrote to his father from Denver, Colo., and on October 22 he wrote another letter, at Oakland, Cal., and wrote again on the 29th of that month. These letters indicated dissatisfaction, and a desire to return to his home. Later, in November and December of that year, he wrote letters to his sister at home, saying that he liked the country better and would remain a while. His last letter was dated December 15, 1895, giving his address as Oakland, care of the Oakland *Tribune*. He was then at work in the office of that paper. This was the last word from John B. Gerdom received by any member of his family.

Inquiry was made of some of his friends and associates, but no information was received. On August 22, 1896, the father wrote to the *Tribune*, at Oakland, Cal., inquiring about his son, and was informed that he left the employment of that paper in February of that year for Stockton, Cal., accompanied by a boy from the same office, and that this boy, who had returned, reported that Gerdom had gone on to Merced, in that state, but had told the boy that he intended returning to Kansas City. The writer added that he

could find no one at Oakland who had heard of Gerdom since. The deposition of the writer was taken confirming the information contained in the letter; also stating that the boy referred to had quit the service of that paper, and that it was reported in the office that he had been killed, and that the witness had read a newspaper report of his death. The testimony of newspaper men at Merced was also taken tending to show that Gerdom had not worked in any printing office there and was unknown to the people engaged in that business. Inquiry was also made at the principal newspaper offices in Kansas City, but no information was obtained of his presence in that city at any time. The family consisted of four children besides John, all adults, and the father and mother. Two of these reside in Kansas City.. On consultation the members of the family residing in Topeka were informed by those in Kansas City that they had not seen or heard of John since he left Topeka.

The defendant society published, in 1904, an advertisement for the missing man in the *Modern Woodmen*, a paper having a circulation in the United States of 700,000 copies, giving a description of Gerdom, with his picture, and offering a reward of $50 for information that would lead to his being found. The general attorney for the Woodmen, who caused the publication of this notice, testified that Gerdom had not been found, but that information had been received that he was seen in California within two years preceding the trial. This paper was mailed to every member of the order, nearly 700,000, of which number over 8000 resided in California, nearly 300 of whom lived in Oakland, and 55 in Merced.

All assessments upon the benefit certificate were duly paid, and Gerdom was in good standing in this order when the claim of the plaintiffs was presented and rejected. This action was then commenced upon the certificate.

The defendant demurred to the evidence. The de-

murrer was overruled, and judgment rendered for plaintiffs, the defendant having elected to stand upon the demurrer.

The law applicable to the facts of this case was thus stated on the former hearing:

"In order that the presumption that a person once shown to have been alive continues to live may be overcome by the presumption of death arising from seven years' unexplained absence from home or place of residence, there must be a lack of information concerning the absentee on the part of those likely to hear from him, after diligent inquiry.

"The inquiry should extend to all those places where information is likely to be obtained, and to all those persons who in the ordinary course of events would be likely to receive tidings if the party were alive, whether members of his family or not; and in general the inquiry should exhaust all patent sources of information, and all others which the circumstances of the case suggest." (*Modern Woodmen v. Gerdom,* 72 Kan. 391 [syllabus], 82 Pac. 1100, 2 L. R. A., n. s., 809.)

The evidence shows the unexplained absence of John B. Gerdom for more than seven years, and that inquiry was made at the place where he was last seen, and where he was at work; also at the place to which he said he was about to go, and of people who were engaged in the business in which he sought and obtained employment while at home and in California. These inquiries were extended to Kansas City, and to the offices of newspapers there, where a person of that vocation would likely seek employment. No tidings were obtained. By the expenditure of more money, and by greater zeal, the investigation might have been extended. Thus inquiry might have been made of members of his lodge, as suggested. Taking into consideration, however, the notoriety of this case, tried twice as it was, it can hardly be supposed that if such knowledge had been available it would have been withheld for so long a time. In view of the fraternal bonds uniting the members of such an order, and their in-

terest in each other, as well as in the order itself, the failure of the defendant after a systematic effort and for so long a time to find this man is quite significant. Probably all efforts that would ordinarily be suggested, however painstaking or exhaustive, would still leave some source of information unexplored. The parents should only be held to the exercise of reasonable diligence in endeavoring to obtain tidings of their son. They were not required to prove conclusively that he was dead, but were bound to produce such evidence as would fairly lead to the presumption of his death.

While the officer of the society who caused the offer of reward to be made testified that he had been informed that Gerdom had been seen within the last two years in California, the fact that the efforts to obtain further information—undertaken, we must presume, in entire good faith—were unavailing tends to the conclusion that the informant was mistaken. Both the parties appear to have been alike unsuccessful in their quest.

We are entirely satisfied with the rules of law stated by Mr. Justice Burch on the former hearing, as illustrated and applied in that opinion, and followed in *Renard v. Bennett*, 76 Kan. 848, 93 Pac. 261. Considerable additional testimony of the nature there suggested was furnished. The lapse of time since that trial, and the notoriety naturally incident to this prolonged litigation, without tidings of the man, were proper matters to be considered by the trial court in determining whether death should be presumed. On a demurrer to the evidence every propitious fact which it fairly supports is accepted as proved, and every favorable inference which may be fairly deduced must be indulged. (*Hoffmeier v. Railroad Co.*, 68 Kan. 831, 75 Pac. 1117.) Measuring the evidence by this standard, we cannot say that it did not tend to prove the facts from which the court might fairly presume that death had occurred. In other words, we cannot say

that the evidence, liberally considered, as it must be upon demurrer, was insufficient to warrant the presumption of death.

The judgment is affirmed.