No. 32,309

ANNA FERNANDEZ, *Appellee,* v. THE SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, a Fraternal Benefit Association, *Appellant.*

(46 P. 2d 10)

Opinion filed June 8, 1935.

*George R. Allen* and *Richard F. Allen,* both of Topeka, and *James M. Meek,* of Kansas City, for the appellant.

*Lee Judy* and *James H. Barnes,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover on a benefit certificate in defendant society. Judgment was for plaintiff. Defendant appeals.

Alejo Fernandez joined defendant society on December 16, 1920. A benefit certificate in the amount of $1,000 was issued. Anna Fernandez, the wife of Alejo, was named beneficiary in the certificate. On February 28, 1924, Alejo left his home in Kansas City, bound for Mexico. On June 8, 1924, he wrote a letter to his wife from Mexico. She has not heard from him since, although she has made diligent inquiry from time to time. The beneficiary kept the dues paid on that certificate up to and including the month of January, 1932.

On January 18, 1932, counsel for Mrs. Fernandez advised the society that Mr. Fernandez had not been heard from since June, 1924, and that all assessments had been paid. He requested the necessary blanks for proof of death. The society answered, stating that it was not liable for any amount in excess of $115.63, which was the accumulated funds of the society apportionable to the members of the insured's class. The society also offered the alternative to Mrs. Fernandez that she could continue to pay all the dues on the certificate until the expiration of the life expectancy of the insured, which would be 36.04 years, at which time the full amount of the certificate would be paid to her.

This action was filed January 23, 1933. The facts are all admitted about as they have been given here.

The theory of defendant is that its liability is limited by certain clauses of the certificate and by-laws of the society. One of these was paragraph 5 of section 6 of the benefit certificate. It reads as follows:

"The absence or disappearance of the member from his last known place of residence and unheard of shall not be regarded as any evidence of the death of such member nor give or create any right to recover any benefits on this certificate or on account of such membership, in the absence of proof of his actual death, aside from and unassisted by any presumption arising by reason of such absence or disappearance, until the full term of his life expectancy at the time he disappears, according to the Carlyle table of life expectancy, has expired, and then only in case all assessments, dues, special assessments and all other sums now or hereafter required under the laws of this society be paid on behalf of such member within the time required, until the expiration of the term of such life expectancy; and the conditions of this certificate shall operate and be construed as a waiver of any statute of any state or

country, and of any rule of the common law of any state or country to the contrary. In the event the payments are not made as above provided, said member shall stand suspended."

At the time the certificate was issued the society was operating under the by-laws of 1919. Section 56 of paragraph 5 of those by-laws reads as follows:

"The absence or disappearance of a member, whether admitted heretofore or hereafter, from his last known place of residence and unheard of shall not be regarded as any evidence of the death of such member nor give or create any right to recover any benefits on any certificate or certificates issued to such member or on account of such membership in the absence of proof of his actual death, aside from and unassisted by any presumption arising by reason of such absence or disappearance, until the full term of his life expectancy at the time he disappears, according to the Carlyle table of life expectancy has expired, and then only in case all assessments, dues, special assessments and all other sums now or hereafter required under the laws of this society be paid on behalf of such member within the time required until the expiration of the term of such life expectancy, and the conditions of the certificate shall operate and be construed as a waiver of any statute of any state or country, and of any rule of the common law of any state or country to the contrary. In the event the payments are not made as above provided, said member shall stand suspended and cannot be reinstated except in the manner as provided in the constitution and laws as to reinstatement."

This was amended by the by-laws of 1923, as follows:

"In all cases of absence or disappearance where the member shall absent himself from his last known place of residence and be unheard of for seven or more years by his family, then and in that event, upon application therefor and proof of such facts by the beneficiary the society will pay to said beneficiary the full proportionate amount of the accumulated reserve in possession of the society held by it for the use and benefit of all persons of the member's age and class and otherwise similarly situated, and such payment shall be made then only in case all assessments, dues, special assessments and all other sums now or hereafter required under the laws of the society be paid on behalf of such member within the time required by said laws, until the full expiration of said term of seven years.

"If the beneficiary so elects, in case a member has disappeared or absented himself, payment of assessments may be continued for the full period of his life expectancy at the date of disappearance as set out in the Sovereign Camp, Woodmen of the World mortality table, set forth in these laws; and upon the payment of all such assessments that may be made against the members of the society, at the end of said life expectancy the society will pay to the beneficiary the full amount of said certificate, less any indebtedness thereon or on account thereof, due to the society."

This by-law was again amended by the by-laws of 1925. That by-law is section 57 of the laws of the society for 1925. It reads as follows:

"There shall be· no liability upon this association under any beneficiary certificate of membership in any case where a legal presumption of the death of such member arises from absence or disappearance until the full term of his life expectancy at the time he disappears, according to the association's table of life expectancy, as set out in section 158 hereof, has expired; and then only in case all assessments, dues, special assessments and all other sums, now or hereafter required under the laws of this association be paid on behalf of such member within the time required until the expiration of the term of such life expectancy. In the event the payments are not made as above provided, said member shall stand suspended and cannot thereafter again become a member except in the manner as provided in the constitution, laws and by-laws of this association.

"However, should the beneficiary so elect, in all cases of absence or disappearance, where the member shall absent himself from his last known place of residence and be unheard of for seven or more years by his family, then and in that event, upon application therefor and proof of such facts by the beneficiary, the association will pay to said beneficiary the full proportionate amount of the accumulated reserve in possession of the association held by it for the use and benefit of all persons of the member's age and class· and otherwise similarly situated, and such payment shall be made then only in case all assessments, dues, special assessments and all other sums now or hereafter required under the laws of the association be paid on behalf of such member within the time required by said laws, until the full expiration of said term of seven years.

"If the beneficiary so elects, in case a member has disappeared or absented himself, payment of assessments may be continued for the full period of his life expectancy at the date of disappearance as set out in the association's mortality table, set forth in these laws, section 158; and upon the payment of all such assessments that may be made against the members of the association, at the end of said life expectancy the association will pay to the beneficiary the full amount of said certificate, less any indebtedness thereon or on account thereof, due to the association."

The petition pleaded the certificate; the circumstances relating to the disappearance of insured; the efforts to locate him; the application for membership; the by-laws and constitution for 1919, 1923, 1925 and 1931; that the insured's assessments and premiums were paid to and including 1932, and that the insured died about June 25, 1931.

The defendant answered, admitting the issuance of the certificate. The answer alleged that the application of insured for membership contained the following provision:

". . . I hereby consent and agree that this application, consisting of two pages, to each of which I have attached my signature, and all the provisions of the constitution and laws of the society, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any bene-

ficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not.

"I hereby waive the attaching of copies thereof to said certificate; and I further waive the provisions of all statutory laws and court decisions in relation thereto; and I further waive for myself and beneficiaries the privileges and benefits of any and all laws which are now in force or may hereafter be enacted in regard to disqualifying any physician or nurse from testifying concerning any information obtained by him or her in a professional capacity; and I expressly authorize such physician or nurse to make such disclosure."

The answer alleged that section 57 of the laws of the society relative to disappearance was an exception of risk provision and was valid and binding on the insured and his beneficiary and that because of the failure of the insured and beneficiary to comply with its provisions, even though the insured had disappeared and had been unheard of for seven years, the society was not liable to the beneficiary under this certificate.

The reply of the plaintiff was a general denial.

At the trial of the case there was no question raised about the disappearance of insured about June 25, 1924, and the efforts to locate him. The facts as to the issuance of the certificate and the passing of the different by-laws of the society were admitted about as they have been set out here.

At the close of the evidence the defendant filed a motion for judgment in its favor on the pleadings and the evidence. This motion was denied and judgment was entered for the plaintiff for the amount of the policy. This appeal is from that judgment.

The sole question is as to the validity of the section of the beneficiary certificate and the various by-laws pleaded. If they should be held valid, the plaintiff was only entitled to a judgment for $115.63, since this is the admitted amount of the accumulated reserve apportioned to the benefit certificate of the insured.

The paragraph that is relied on has been already set out in this opinion. At the time the certificate was issued the fifth paragraph of section 56 of the by-laws of 1919 was in effect. That paragraph has been quoted heretofore in this opinion.

These two paragraphs, if given the meaning contended for by defendant, would nullify the law in this state that an unexplained absence of a person for a period of seven years, during which time he has not been heard from, although inquiries concerning him have been diligently prosecuted, is sufficient to raise a presumption of death. We will deal with this question before considering the ques-

tion of the effect of by-laws of the society passed subsequent to the issuing of the certificate.

In the case of *Hannon v. United Workmen,* 99 Kan. 734, 163 Pac. 169, this court considered a similar question. There this court said:

"The rule as to the circumstances under which unexplained absence shall be deemed to raise a presumption of death is so well settled in this state as to have acquired substantially the force of a statute. It has been declared and applied by the courts and acquiesced in by the legislature." (p. 738.)

There can be no question as to what the law is with reference to this presumption. Is a provision in a membership certificate and a by-law of a society which strikes down this rule valid? The case of *Hannon v. United Workmen,* supra, held such a provision bad. In that case the provision was contained in a by-law which was passed after the certificate was issued. The decision, however, held that the by-law was an unreasonable one. Once it is held that the provision is unreasonable it makes but little difference whether it was in the certificate when it was issued or not.

·Although this court has not passed on this precise question it has considered analogous ones. In the case of *Fidelity and Deposit Co. v. Davis,* 129 Kan. 790, 284 Pac. 430, a clause in a contract of indemnity was as follows:

"A. . . . and I further agree that all vouchers and other evidence of payment of any such loss, liability, costs, damages, charges or expenses of whatsoever nature incurred by the company or its attorneys shall be taken as conclusive evidence against me and my estate, of the fact and extent of my liability to the company." (Syl. ¶ 1.)

The surety company was compelled to pay a claim to the commissioner of finance of Missouri on account of the bond. When the surety company sued the person for whom it had written the bond, it relied on the above clause and moved for a judgment on the pleadings.

The clause was in the bond when it was signed so that no question was raised about a subsequent change. This court held that such a clause was contrary to public policy and void. But little can be added to the reasons given in the able opinion in. that case. The same argument was used by the court that will be noted running through the opinions cited hereinafter, that is, that such a clause if held valid would tend to oust the courts of jurisdiction and make them mere ministerial officers.

In *Wichita Council v. Security Benefit Ass'n,* 138 Kan. 841, 28 P. 2d 976, this court considered a case where the national executive

council has suspended a subordinate council of the society without a hearing. When this action was attacked in court the society relied on one of its by-laws, which gave the national executive council authority to do that. The record does not show whether such a by-law was in effect when the subordinate council was chartered. This court said that whether it was or not was not important. The members had all agreed to be bound by any by-laws and the constitution of the society as they then existed or might thereafter be amended. The court said:

"The question of the extent to which a member is bound by reason of a provision of this kind in his application has been before this court many times. When the by-law in question, as it originally existed or as it was later amended, was one which the society had a right to pass, and was reasonably necessary to carry out its purposes, it was upheld, . . . and where those conditions did not exist it was held invalid." (p. 850.)

The holding is of interest to us here because the court held that the by-law was unreasonable and therefore invalid. The court held thus regardless of whether the by-law was in effect when the subordinate council was chartered or not.

In *Modern Woodmen of America v. Michelin,* 101 Okla. 217, this question was decided. In that case the court held that a similar clause was unreasonable and against public policy. That by-law had been passed subsequent to the issuance of the certificate, but the insured had agreed to be bound by any subsequent by-laws. The court held expressly that the clause was bad whether it was in the certificate when it was issued or passed afterwards. The court said:

"If a rule of evidence can be abrogated like this, how long will it be before the procedure in all the courts of the land will be controlled by contracts regulating the method of procedure and the competency of testimony and of witnesses and the sufficiency of proof? Why, this by-law, if valid, effectively repeals any statute contrary to its provision. This company has made a little legislature of itself and would now perform the judicial functions of this court in controlling through this by-law how we shall determine the existence of a disputed fact." (p. 224.)

The opinion quotes the case of *Hannon v. United Workmen,* supra.

In the case of *Utter v. Insurance Co.,* 65 Mich. 545, the action was upon a policy that insured against accidental death. The policy contained the following clause:

"And this insurance shall not be held to extend to disappearances, nor to any case of death or personal injury, unless the claimant under this policy shall establish, by direct and positive proof, that the said death or personal

injury was caused by external violence and accidental means, and was not the result of design, either on the part of the insured or of any other person."

The insurance company argued that this clause controlled the case and that the question of whether or not the killing was accidental could not be shown by circumstantial evidence. The court said:

"Courts will not permit the course of justice, upon trials before them, to be stipulated or contracted in such manner as to defeat the ends to be subserved by such trials. The parties to the contract cannot agree to oust the courts of jurisdiction over such contract. The operation of this clause, requir-. ing direct and positive proof, in many cases would, in effect, preclude the court from jurisdiction and bar a recovery. If they can make this agreement, they can also stipulate that the evidence must come from certain persons, or make any agreement they see fit, controlling and directing the course of proceeding upon the trial. They may contract in relation to a condition precedent before bringing suit, or in relation to anything going to the remedy, but not to the right of recovery itself." (p. 554.)

In the case of *Supreme Ruling of Fraternal Mystic Circle v. Hoskins*, 171 S. W. 812 (Tex. Civ. App.), Revised Statutes of Texas, 1911, article 5707, provided that any one absenting himself beyond sea or elsewhere for seven successive years should be presumed to be dead. This enacted by statute what has been the law of our state for many years. The court, in considering a clause such as the one we have here, that was in the certificate when issued, said:

"As it is correct, according to the rule, that no person has a vested right in rules of evidence, and it cannot be regarded as constituting any part of a private contract, then it would follow that parties may not go to the extent of making a valid term of private contract which has the effect of making ineffective an existing statute declaring the legal consequence that attaches to proof of certain facts." (p. 814.)

In the case of *Fleming v. Merchants' Life Ins. Co.*, 193 Ia. 1164, a by-law of the company provided as follows:

"Disappearance or long-continued absence of the member unheard of shall not be regarded as evidence of death or of any right to recover." (p. 1165.)

The insured disappeared. After more than seven years the beneficiary sued. The company used the above clause as a defense. The court said:

"It is not meant thereby that such a right exercised by litigant parties ousts the court of its authority or power to hear the case and render judgment thereon, but it does mean that the jurisdiction is thereby so limited and circumscribed as to take from the court its authority to conduct the trial and control the introduction of evidence in accordance with the settled rules of law. The right so claimed by the appellant, once established, reduces the

court to a mere judicial lay figure, upon which interested and ingenious parties may hang their devices for escaping application of the legally established tests of truth." (p. 1172.)

To the same effect is *McCormick v. Woodmen of the World,* 57 Cal. App. 568. (See, also, *Fordyce v. Modern Woodmen of America,* 129 Wash. 364; *Bennett v. Modern Woodmen,* 52 Cal. App. 581.)

We are aware that the case of *Lunt v. Grand Lodge, A. O. U. W.,* 209 Ia. 1138, upholds the validity of a clause similar to the one contained in the by-laws of 1923 in this case. It should be noted, however, that the clause in that case was in effect when the certificate was issued, and did not purport to strike down the rule of evidence as does the clause which we are considering. The holding in the opinion that is of interest to us is that which states that a by-law which attempts to modify or control the procedure in courts of justice is valid.

We prefer the reasoning of the Iowa court in the case of *Fleming v. Merchants' Life Ins. Co.,* supra, to that of the Lunt case on this question.

Our attention has been called to the case of *Wertheimer v. Travelers' Protective Ass'n,* 64 F. 2d 435. That case upheld a clause in an accident policy which provided that the association should not be liable when the member died as the result of a gunshot wound or the alleged accidental discharge of firearms when there was no eyewitness except the member himself. One of the authorities cited in the opinion is *Schumacher v. National Travelers Benefit Association,* 118 Kan. 523, 235 Pac. 844. That case upheld an eyewitness clause. The court distinguished the case of *Hannon v. United Workmen,* supra, by referring to the fact that the by-law attacked in the Hannon case had been enacted after the issuance of the certificate. We have demonstrated heretofore that such is not a valid distinction. We much prefer the distinction contained in the specially concurring opinion written by the distinguished justice who wrote the opinion in the Hannon case. The specially concurring opinion held that the clause in question related essentially to the character and circumstances of the accident insured against, rather' than to the court procedure by which a fact may be established.

The authorities are in conflict on the question, but we choose to follow what appears to us to be the greater weight of authority and the better reasoned cases. We hold that the clause contained in the beneficiary certificate and the by-law in effect when the certifi-

cate was issued are invalid, and that the disappearance and unexplained absence of the insured was *prima facie* evidence of his death.

There remains the question of whether the provisions contained in the by-laws for 1923 and 1925 are valid. It will be noted that these provisions do not expressly waive the rule of evidence that an unexplained absence of seven years is evidence of death. The clause simply provides that in cases of unexplained absence for seven years the society will pay to the beneficiary the proportionate amount of the accumulated reserve held for the insured, providing all dues and assessments were kept paid during the seven years. The alternative is offered that the beneficiary could continue to pay the dues for the period of life expectancy of the insured and then collect the face of the policy. This period in the present case was about 36 years.

What has been said with reference to the provision in the certificate compels us to reach the conclusion that these by-laws enacted after the issuance of the certificate are unreasonable. They seek by a change in the language to accomplish the same result that was attempted in the certificate. In seven years the beneficiary would pay in more than the amount which the by-laws provide would be paid to the beneficiary, and to compel the beneficiary to continue to pay for the term of life expectancy of the insured would render the certificate practically worthless and be manifestly unreasonable.

The judgment of the trial court is affirmed.