No. 33,202

ESTHER LEVEN, *Appellee*, v. THE YEOMEN MUTUAL LIFE INSURANCE COMPANY, of Des Moines, Iowa, Successor in Interest to THE BROTHERHOOD OF AMERICAN YEOMEN, *Appellant*.

(65 P. 2d 254)

Opinion filed March 6, 1937.

*George R. Allen, Richard F. Allen,* both of Topeka, *Arthur J. Stanley* and *J. E. Schroeder,* both of Kansas City, for the appellant.

*A. J. Herrod,* of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to recover on a benefit certificate of insurance.

The insured was in arrears in the payment of his monthly dues and assessments at the time of his death; and the controverted issue between the plaintiff beneficiary and the defendant company was whether the liability of the latter was merely the paid-up value of the benefit certificate or its face value under the contract provision for extended insurance.

The pertinent facts were these: On December 8, 1922, a predecessor of the defendant organization issued a certificate of insurance to Sam Leven. Later a certificate designated "Form C" was issued to him in lieu thereof. By its terms the insured was required to make monthly payments of $2.69 as assessments and incidental dues. The certificate contained the usual lengthy recitals of the rights of the insured and the liabilities of the insurer, and bound the beneficiary to abide by whatever bylaws might be adopted in the future by

the defendant organization. The certificate contained a provision for "paid-up and extended protection" when it had been in effect for three years or longer. Pertinent thereto were the following:

"After the payment of monthly or other payments for three or more full years, one of the following options shall become effective.

"1st. AUTOMATIC PAID-UP PROTECTION. In case of the nonpayment of any monthly or other payment when due hereon, then without any action on the part of the member named herein, this certificate shall become a paid-up certificate for the amount shown by the adjoined table of paid-up protection, and such amount will be payable in one sum under the conditions of this certificate upon the death of the member or

. . . . . . . . . . . . .

"3d. EXTENDED PROTECTION. Upon written request of the member named herein, made while this certificate is in full force, the Association will extend and continue in force the full amount of this certificate as term protection for the number of years and days shown by the adjoined table of extended protection.

. . . . . . . . . . . . .

TABLE OF VALUES

| At the end of | Paid-up protection | Extended protection Years | Days |
|---|---|---|---|
| 3 years | $55 | 2 | 64" |

In July, 1926, while the insured was still in good standing, the bylaw of defendant which governed the rights of members suspended for nonpayment of dues read, in part, thus:

"[§ 118] . . . a member holding a Form C certificate on which he has paid the monthly or other required payments for three full years or more shall be entitled, within thirty days from the date of his said suspension, to exercise one of the options specified in his certificate relating to paid-up and extended protection or cash withdrawal value . . . If the member exercises no such option within said thirty-day period, then his certificate shall be in force for only the amount and period provided by the terms thereof."

On August 31, 1926, the insured failed to pay the assessment due that month, in consequence of which he was suspended. At that time his certificate of insurance had been in force 3 years, 8 months and 25 days.

The insured never paid his delinquent monthly assessments and was never restored to active membership; and he never made an election between paid-up insurance and extended insurance as his certificate of insurance permitted him to do.

On November 14, 1927, section 118 of the bylaws was amended and renumbered section 107, and reads, in part, thus:

" . . . Provided, however, *if the certificate* of a member which provides for paid-up or extended insurance on default of payments, after the payment

by the member of the required payments for three or more full years, *is suspended* as herein provided, *it shall be continued in force for the amount of the death benefit only and for the period provided by the terms of said certificate in the event of default of payments by the members."* [Italics ours.]

The insured died on August 20, 1928, and defendant paid the plaintiff beneficiary the sum of $55, which was the paid-up value of the certificate. Later, upon advice of counsel, she made claim for the full face value of the certificate, $1,000, on the ground that her husband had died within the period of extended insurance. Her demand was refused and this lawsuit followed. The single question of present concern is whether the trial court correctly decided that the extended insurance provision of the certificate governed plaintiff's right and defendant's liability. Judgment for the amount of the policy less the $55 theretofore paid by defendant was rendered in favor of the beneficiary.

The gist of defendant's argument to show error in the court below is that the deceased's right to paid-up insurance became vested at the time of his suspension, and that the extent of defendant's liability was thereby and simultaneously fixed. It also contends that the contract of insurance was not controlled by the after-enacted bylaw of November 14, 1927 (§ 107), which changed the earlier rule which automatically gave the suspended member paid-up insurance unless he took affirmative steps to choose extended insurance in lieu thereof. It is clear, of course, that if the bylaws of 1927 (§ 107) governed the case, the plaintiff's contention is correct and likewise the judgment in her behalf. Otherwise, the defendant was entitled to judgment, since it had paid her the paid-up value of the certificate.

It cannot be gainsaid that notwithstanding Sam Leven was suspended from membership because of nonpayment of dues, he was still *insured* in the defendant organization. At the inception of his contract relationship with defendant, his application for insurance contained a recital that—

". . . I [Sam Leven] agree that this application with questions and answers thereto shall be copied on, or a photographic copy thereof attached to the certificate to be issued hereon, and that such certificate and application, together with the constitution and *bylaws now in force or hereafter enacted* shall form the contract between me and the Brotherhood of American Yeomen, and that such contract *shall bind me* and my beneficiaries now and in the future."

In the body of the certificate was the following:

"Agreement

"*It is agreed* by the member holding this certificate that the certificate, the charter or articles of incorporation, *the bylaws* of the Association and the application for membership, and the medical examination, signed by the applicant, with all amendments to each thereof, *shall constitute the agreement* between the Association and the member; *and any changes, additions or amendments* to said charter or articles of incorporation and bylaws of the Association *enacted subsequent to the issuance of this* certificate *shall be binding* upon the member and his beneficiary, or beneficiaries, *and shall govern or control the agreement in all respects in the same manner as if such changes, additions or amendments had been made prior to and were in force at the time of the application for membership.*" [Italics ours.]

The significance which should be attached to bylaws adopted or amended after the original contracts of fraternal insurance were made has frequently engaged the attention of this and other courts; and while courts and litigants formerly encountered legal questions difficult of solution where no provision was contained in the original contracts touching the right of the organization to make binding declarations of right and limitations of liability by after-enacted bylaws (*Hart v. Annuity Assoc.*, 86 Kan. 318, 120 Pac. 363), those difficulties have largely disappeared in recent years because the insurance certificates issued by fraternal organizations nowadays generally provide that the bylaws existing at the time the contract of insurance is made may be amended in the future and that such future amendments, when adopted, shall become a part of the contract and shall bind the insured and his beneficiaries. (*Miller v. National Council*, 69 Kan. 234, 76 Pac. 830; *Kirk v. Aid Association*, 95 Kan. 707, 149 Pac. 400.)

In *Guy v. Modern Woodmen*, 128 Kan. 745, 280 Pac. 756, the application of this contractual feature of the benefit certificate inured to the advantage of the insurance society and to the loss of the beneficiary. It was there said:

"The rule is that the subsequently enacted rules, regulations and bylaws of a fraternal insurance organization, adopted after the issuance of a beneficiary certificate therein, are binding on both the member of the organization and on the beneficiaries named in the certificate where the certificate provides that it is issued subject to all rules, regulations and bylaws then existing or that may thereafter be adopted. [Citations.] The rule stated is modified by the principle that subsequently adopted rules, regulations and bylaws must be reasonable. There is nothing in the pleadings in the present action to indicate that the adopted bylaw operated unreasonably." (p. 747.)

See, also, *Lawson v. Brotherhood of American Yeomen*, 138 Kan. 248, 25 P. 2d 344, and citations.

The italicized language in the amended bylaw of November 14, 1927, is not so clear and specific as it ought to be, but it was formulated by defendant; and it is fairly susceptible of the construction placed on it by the trial court, and so construed it governed the rights of the beneficiary and the liability of the insurance company.

The judgment is affirmed.