No. 33,394

Robert B. Green, *Appellee*, v. The Royal Neighbors of America, a Fraternal Benefit Society, *Appellant*.

(73 P. 2d 1)

Opinion filed November 6, 1937.

*George R. Allen* and *Richard F. Allen,* both of Topeka, for the appellant.

*Forrest J. Horton,* of Salina, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to recover on a certificate of fraternal insurance issued by defendant on the life of Mary E. Green.

The defense to the action was that proof of death was wanting.

The facts in brief were these: In 1924 Mary E. Green was living in Salina, Kan., with her husband, plaintiff herein. She was then forty-four years of age. On her application containing the usual facts and recitals, defendant issued to her its benefit insurance certificate for $1,000, in which plaintiff was named as beneficiary.

In March, 1925, Mary E. Green disappeared from her home and her whereabouts thereafter have been unknown. She and her husband had several children then virtually grown up, and there was no family discord or other known reason why she should leave her home and family.

Her husband and their children and relatives made a diligent search for her. They investigated various clues and rumors concerning her. They hired a detective to assist in the inquiry. A son went to Colorado Springs; the plaintiff husband went to California; other members of the family went to Oklahoma City and to Kansas City, all in the pursuit of clues concerning the missing woman, but all to no avail.

The family regularly paid the required dues on the missing woman's benefit certificate for seven years or longer, and then plaintiff brought this action alleging the facts stated above, and on the legal assumption of her death he prayed judgment for the amount of the benefit certificate.

Defendant answered, admitting noncontroversial matters; that it was a fraternal benefit society organized under the laws of Illinois; and that it was licensed to do business in Kansas as a foreign corporation. It set out its bylaws, also a copy of the insured's application for a benefit certificate, and the provisions and terms of the insurance contract. Some of these will require attention later in this review. All material facts were stipulated by counsel for the litigants and the trial court gave judgment for plaintiff.

Defendant appeals, complaining that the trial court disregarded various provisions of the insurance contract, and particularly the following:

" 'Eleventh. It is agreed by the member that this certificate, the charter or articles of incorporation, the bylaws of the society, all the resolutions above referred to, and the application for membership and medical examination signed by the applicant, with all amendments to each thereof, shall constitute the agreement between the society and the member.' . . . .

"Section 255 of the defendant's bylaws, revision of 1921, reads as follows: 'No lapse of time or absence or disappearance on the part of any member heretofore or hereafter admitted into the society, without proof of the actual death of such member while in good standing in the society, shall entitle his or her beneficiary or beneficiaries to recover the amount of his or her benefit certificate, except as hereinafter provided. The disappearance or long-continued absence of any member unheard of shall not be regarded as evidence of death nor raise presumption of death or give any right to recover on any benefit certificate until the full term of the member's expectancy of life, according to

the National Fraternal Congress table of Mortality, has expired within the life of the benefit certificate in question, and this law shall be in full force and effect, any statutes or laws to the contrary notwithstanding.'"

In its answer defendant had pleaded that such a provision in the bylaws of another fraternal benefit society similarly incorporated in Illinois had been adjudicated to be valid by the supreme court of Illinois, in *Steen v. Modern Woodmen,* reported in 296 Ill. 104, 129 N. W. 546, 17 A. L. R. 406.

It was also pleaded in defendant's answer that the insured's life expectancy was 26.8 years from the date of her disappearance, or until 1951; and to entitle her beneficiary to the benefits of the insurance certificate it would have been necessary that the regular dues and assessments on the policy be paid until that time, whereas such payments had ceased in 1932.

Defendant also relied in the trial court, as it still does, on certain recitals in the missing woman's application for insurance, some of which read:

"I agree . . . to conform in all respects to the bylaws, rules and usages of the society now in force, or which may hereafter be enacted and adopted by same; that this application and the articles of association and bylaws of this society shall form the sole basis of my admission to and membership therein, and of any benefit certificate to be issued me by said Royal Neighbors of America . . . .

"That this application may be referred to in any such benefit certificate as the basis thereof, and that they shall be construed together as one entire contract . . . . And I further expressly waive for myself and my beneficiaries the provisions of any law, and the statutes of any state, now in force or that hereafter may be enacted, that would, in the absence of this agreement, modify or conflict with my contract with this society, or cause it to be construed in any way contrary to its express language."

In the insured's benefit certificate itself there was a recital that it was issued to Mary E. Green, a member of *Salina Camp No. 153,* at Salina, Kan. In the body of this certificate was also the following:

"This benefit certificate is issued and accepted only upon the following express warranties, conditions and agreements:

"First: *That the Royal Neighbors of America is a fraternal beneficiary society as contemplated, and as defined by the statutes of the state where the member resides.*" [Italics ours.]

It may be conceded that the law of Illinois as interpreted by its highest court in the Steen case, cited above, makes it clear that in a contract of insurance made in Illinois or otherwise governed by Illinois law, the provision relied on by defendant would bar a recovery.

This insurance contract was made in Kansas, and ordinarily would be governed by the law of this state, which by repeated decisions of this court is quite at variance with that of Illinois on the vital question in this lawsuit. In our recent case of *Fernandez v. Sovereign Camp*, 142 Kan. 75, 46 P. 2d 10; Id., 142 Kan. 563, 50 P. 2d 1149, the defense to an action on a fraternal benefit certificate was chiefly predicated on a bylaw substantially similar to the bylaw and contract provision relied on in the present appeal to defeat recovery. This court held:

"A provision in a beneficiary certificate which provides that 'the absence or disappearance of the member from his last known place of residence and unheard of shall not be regarded as any evidence of the death of such member nor give or create any right to recover any benefits on this certificate or on account of such membership, in the absence of proof of his actual death,' is unreasonable and against public policy, and therefore void.

"A bylaw of a fraternal insurance society enacted after the issuance of the beneficiary certificate, which attempts to accomplish the same end as set out in the above syllabus, is void." (Syl. ¶¶ 1, 2.)

In the opinion our earlier case of *Hannon v. United Workmen*, 99 Kan. 734, 163 Pac. 169, L. R. A. 1917C 1030, was cited. Two sections of its syllabus read:

"The evidence is found to be sufficient to support a presumption of the death of a person, arising from his unexplained disappearance, followed by an absence of seven years during which nothing was learned of him, notwithstanding the diligent prosecution of inquiries.

"A bylaw of a fraternal beneficiary association providing that 'mysterious disappearance or unexplained absence of a member shall never be considered proof or evidence of death of such member' does not prevent the application of the usual rule as to unexplained absence under certain circumstances being sufficient to raise a presumption of death, in the trial of an action brought upon a certificate issued before its adoption." (Syl. ¶¶ 3, 4.)

In the Hannon case, which was decided twenty years ago, the bylaw relied on as a defense was adopted after the certificate of insurance was issued, but that distinction in the cases is not recognized as material nowadays, particularly where the applicant for insurance agrees in advance to abide by after-enacted bylaws. (*Dey v. Knights & Ladies of Security*, 113 Kan. 86, 213 Pac. 1066; *Guy v. Modern Woodmen*, 128 Kan. 745, 747, 280 Pac. 756; *Leven v. Yeomen Mutual Life Ins. Co.*, 145 Kan. 338, 341, 65 P. 2d 254.)

Counsel for appellant press on our attention two cases, *Royal Arcanum v. Green*, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, and *Modern Woodmen v. Mixer*, 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783.

In the Green case the United States supreme court held that the rights of members of a fraternal beneficiary society were defined and limited by its constitution and bylaws as interpreted by the law of the state in which the society was incorporated; and as applied to that case the courts of New York were bound by the full faith and credit clause of the federal constitution to give effect to the constitution and bylaws of a fraternal society incorporated in Massachusetts according to the law of the latter state irrespective of the fact that the contract was made in New York and that the action arose in a New York court.

In the Mixer case, the action arose on a fraternal insurance policy issued by a society incorporated in Illinois. The contract had been made in South Dakota, but was sued on in Nebraska. Resistance to its enforcement was based on the failure of the beneficiary to prove the death of the insured. Under Nebraska law, seven years' unexplained absence raises the presumption of death; and under the law of that state a bylaw of a fraternal insurance society or such a provision in a fraternal insurance contract intended to supersede the law of Nebraska, was unreasonable, or contrary to the *lex fori*, or both. The Nebraska supreme court affirmed a judgment to that effect without an opinion (*Mixer v. Modern Woodmen of America*, 111 Neb. 334, 197 N. W. 129), but cited its earlier case of *Garrison v. Modern Woodmen of America*, 105 Neb. 25, 178 N. W. 842, the syllabus of which reads:

"A bylaw of a fraternal benefit society enacted after the issue of the benefit certificate must be reasonable to bind a member, though the certificate provides that the member shall be bound by the bylaws as they then existed, or may be thereafter modified or enacted.

"A subsequently adopted bylaw of a fraternal beneficiary society is not binding upon a member who has agreed in his application and the certificate issued to him that all bylaws then in force or thereafter adopted should be binding upon him, where such bylaw provides that the disappearance or long-continued absence of a member unheard of shall not be regarded as evidence of death or right of recovery on any benefit certificate issued by the society until the full term of the member's expectancy of life.

"When a member disappears, and the beneficiary depends upon such disappearance as a presumption of death, the society is estopped from claiming the proofs of loss were not sufficient, where it took the position that it was not liable until actual death was shown, or payments made for term of expectancy."

But the United States supreme court reversed the Nebraska supreme court, following its own decision in *Royal Arcanum v. Green*, supra. In the opinion Mr. Justice Holmes said:

"The indivisible unity between the members of a corporation of this kind in respect of the fund from which their rights are to be enforced and the consequence that their rights must be determined by a single law, is elaborated in *Supreme Council of the Royal Arcanum v. Green*, 237 U. S. 531, 542. The act of becoming a member is something more than a contract, it is entering into a complex and abiding relation, and as marriage looks to domicil, membership looks to and must be governed by the law of the state granting the incorporation. We need not consider what other states may refuse to do, but we deem it established that they cannot attach to membership rights against the company that are refused by the law of the domicil. It does not matter that the member joined in another state." (*Modern Woodmen v. Mixer*, 267 U. S. 544, 551, 45 S. Ct. 389, 69 L. Ed. 783.)

In deference to this decision, the supreme court of Oklahoma in *Sovereign Camp, W. O. W. v. Smith*, 176 Okla. 545, 56 P. 2d 408, abandoned its own prior rule touching the significance attaching to seven years' unexplained absence of an insured, unheard of by those who would naturally know something about him by communication or otherwise. In its opinion the supreme court of Oklahoma said:

"Taking up first the question of the validity of such provision, the plaintiff relies upon the case of *Modern Woodmen of America v. Michelin*, 101 Okla. 217, 225 P. 163, which case involved the seven years' absence rule and a clause in the contract that such absence shall not be regarded as evidence of death until after the full term of the member's life expectancy. That case did hold such a clause contrary to public policy and void. However, it was decided before the supreme court of the United States handed down its decision in *Modern Woodmen of America v. Mixer*, 267 U. S. 544, 69 L. Ed. 783, wherein the court held that a citizen of one state becoming a member of such a society is bound by a bylaw subsequently adopted which is declared valid by the courts of the state of the domicile of the society; that 'membership looks to and must be governed by the law of the state granting the incorporation.' The case involved the identical question passed upon in the Michelin case, and by reason of that decision, the Michelin case was practically (but not expressly) overruled by this court in *De Vore-Norton v. Brotherhood of Locomotive Firemen*, 132 Okla. 130, 270 P. 12, wherein it was stated that 'the rule announced in the Mixer case . . . is controlling in this state.' And in *Modern Woodmen of America v. Crudup* (decided by this court on October 15, 1935, long after the briefs were filed herein), 175 Okla. 183, 51 P. 2d 718, the Michelin case was again overruled by implication and the rule announced in the De Vore-Norton case expressly adopted." (p. 547.)

We should take this Oklahoma case as persuasive and the Green and Mixer decisions of the United States supreme court as authoritative, but for the plain and unequivocal language of the insurance certificate before us. That language reads:

"This benefit certificate is issued and accepted only upon the following express warranties, conditions and agreements:

"First: That the Royal Neighbors of America is a fraternal beneficiary society as contemplated, and as defined by the statutes of the state where the member resides."

For the purposes of this insurance contract the defendant agreed that it should be regarded as a fraternal beneficiary society as defined by the statutes of Kansas, not of Illinois. Considered with the other portions of the text, there is, to be sure, a seeming conflict between this language and other language of the constitution and by-laws, particularly where it was agreed—

" . . . that this certificate, the charter or articles of incorporation, the bylaws of the society, all the resolutions above referred to, and the application for membership and medical examination signed by the applicant, with all amendments to each thereof, shall constitute the agreement between the society and the member."

How should that seeming conflict be reconciled? The defendant society drafted this insurance certificate, and is responsible for its text. Note, too, that "this certificate" as well as the constitution and bylaws of defendant constitute the contract sued on. Under all the rules of construction of contracts, it should be construed strictly against the party who indited its terms and favorably towards the other party to it. (*Bankers Mortgage Co. v. Dole,* 130 Kan. 367, 372, 286 Pac. 258.)

In view of the foregoing we feel compelled to adhere to our own pronouncements of Kansas law. (*Fernandez v. Sovereign Camp,* 142 Kan. 75, 46 P. 2d 10, and citations.) Following is a partial list of our cases which hold that seven years' unexplained absence or disappearance, where the person concerned has been unheard of by those who would be likely to do so, together with a proper showing of diligent but fruitless inquiry concerning him, will suffice as prima facie proof of death to take the issue of fact to the jury or to the court as trier of disputed fact. (*Ryan v. Tudor,* 31 Kan. 366, 2 Pac. 797; *Modern Woodmen v. Gerdom,* 72 Kan. 391, 82 Pac. 1100; Id., 77 Kan. 401, 94 Pac. 788; *Renard v. Bennett,* 76 Kan. 848, 93 Pac. 261; *Farington v. Modern Woodmen,* 82 Kan. 841, 109 Pac. 187; *Thompson v. Millikin,* 93 Kan. 72, 143 Pac. 430; *Mackie v. United Workmen,* 100 Kan. 345, 164 Pac. 263; *Allen v. Home Circle,* 112 Kan. 576, 212 Pac. 95; *McKay v. Kansas Soldiers' Compensation Board,* 126 Kan. 120, 266 Pac. 935.) See, also, a critical discussion of this general subject in Kansas Judicial Council Bulletin, October, 1935, pp. 91-98.

It follows that the judgment in favor of plaintiff on the pleadings and stipulated facts was correct, and it is therefore affirmed.