No. 39,916

HELENA BELLE CESSNA, *Appellee*, v. THOMAS CARROLL, et al., *Appellants*.

(290 P. 2d 803)

Opinion filed December 10, 1955.

*Tweed W. Ross*, of Beloit, argued the cause and was on the briefs for the appellants.

*R. L. Hamilton*, of Beloit, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: Plaintiff commenced an action in the district court of Mitchell County on September 7, 1954, to quiet title to real estate. She prevailed and the defendants appeal.

The pleadings join issue on the question whether plaintiff had acquired title to two tracts of real estate by adverse possession and, since the defendants adduced no testimony but stood on their demurrer to plaintiff's evidence, the evidence adduced by plaintiff in the court below in support of her position on that issue is not in controversy and must be accepted as true. Therefore, without further reference to the pleadings, we proceed with a statement of the facts, conditions, circumstances and events decisive of the appellate issue involved.

Lydia A. Ray, a resident of Mitchell County, Kansas, died testate on October 1, 1934, without children and leaving W. O. Ray, her husband, as her sole heir at law. On that date she held the record title to a quarter section of real estate, previously deeded to her by such husband in 1898, also a town lot in Glen Elder, Kansas, all located in Mitchell County, and was the owner of personal property of the approximate value of $6,000.

Lydia's will was admitted to probate in Mitchell County on October 5, 1934. So far as here pertinent that instrument reads:

"2nd—I give, devise and bequeath unto my beloved husband, W. O. Ray, all the rest and residue of my estate, real, personal and mixed, of which I shall die seized and possessed, to have and to hold the same for and during the entire period of his natural life, with permission to use such part of the personal, real and mixed property as he may need for his own use and livelihood, for and during the period of his natural life. Upon the death of my beloved husband, it is my wish that the funeral expenses, including the expense of last sickness, be paid and that the rest and residue of my estate be divided, share and share alike, to and among the following: To the living heirs at law of Thomas Carroll, Washington Carroll, John Carroll, Andrew Carroll, Will Carroll, Jessie Carroll and to Mack Carroll or his heirs in the event of his death. It is my will that each of said names representing my deceased brothers, except Mack Carroll, receive one-seventh (⅐) of my estate after the death of my husband.

"3rd—And lastly, I do nominate and appoint my beloved husband, W. O. Ray, to be the executor of this my last will and testament."

In conformity with the decedent's will W. O. Ray was appointed executor of her estate, notice of his appointment being first published in a Mitchell County newspaper (The Glen Elder Sentinel) on October 11, 1934, in accord with the requirements of R. S. 1923, 22-329. After giving this notice the executor proceeded with the administration of the estate and in connection with that action obtained an order from the Inheritance Tax Commission of the State of Kansas reciting that no inheritance tax was levied against the decedent's real estate because W. O. Ray had been given a life estate therein and the remainder was subject to contingencies set out in her will.

Sometime after obtaining the foregoing order the executor filed a report of his administration of the estate in probate court and then gave notice, which he published for four consecutive weeks as required by R. S. 1923, 22-904, of his intention to make final settlement and close the estate on January 3, 1936. On that date the matter of final settlement came on for hearing in probate court.

Thereupon that tribunal made an order, never since appealed from by any one, which, for purposes here pertinent, reads:

·"And the Court further finds that the following named persons are the heirs, devisees and legatees of Lydia A. Ray, deceased, and entitled to share in a distribution of said estate, and in the proportion set opposite their names, to-wit: W. O. Ray, husband, Entire Estate."

Following the action last above indicated W. O. Ray took full and complete possession of the involved tracts of real estate. On October 20, 1938, he conveyed the Glen Elder town lot by warranty deed to Marie Lowell, the plaintiff's mother, who immediately recorded such deed in the office of the Register of Deeds of Mitchell County and thereafter remained in the open, notorious and adverse possession of such property until May 25, 1953, when she was killed in an automobile accident, leaving the plaintiff herein as her sole and only heir at law.

In addition to constant and uninterrrupted occupancy the record discloses numerous acts on the part of W. O. Ray evidencing that he had been in the open, notorious and adverse possession of the involved quarter section of real estate, under claim of title, since January 3, 1936, by virtue of the probate court's decree of final settlement. On December 27, 1937, as a widower, he executed and delivered an oil and gas lease on the land to one J. S. Alcorn which was filed for record in the office of the Register of Deeds of Mitchell County on February 8, 1938. On April 16, 1940, W. O. Ray married Marie Lowell and lived with her in Glen Elder until the date of his death. On the same day he and Marie executed and delivered a mortgage, recorded on the next day, to the Traders State Bank of Glen Elder to secure an indebtedness of $500. On October 8, 1941, he conveyed the land to Marie by warranty deed, reciting a consideration of one dollar and other valuable considerations. This instrument was recorded in the office of the Register of Deeds on the same day. Thereafter, and on October 21, 1941, she reconveyed the land by a deed containing like consideration. Subsequently he kept the title in his name until he died testate at Glen Elder on August 9, 1942, leaving all his property to Marie, the involved quarter section being listed in the inventory of his estate, subject to a mortgage of record he and Marie had placed on that property on February 16, 1942, to secure an actual indebtedness of $1,000.

· For what it may be worth it should perhaps be stated the remain-

ing documentary evidence, offered and received without objection as a part of plaintiff's case, consists of the files of the probate court in the estate proceedings of both W. O. Ray and Marie Ray, deceased. And added that the decree of final settlement in the proceeding first mentioned, dated December 27, 1943, shows the quarter section of land here involved was assigned to Marie Ray by probate court decree as property belonging to her deceased husband on the date of his death and that the final settlement decree in the last mentioned proceeding, dated July 16, 1954, discloses that both tracts of real estate here in question were regarded as property belonging to the estate of Marie Ray and assigned to the plaintiff as the sole heir at law of such decedent.

What has been related up to this point has been gleaned from the documentary evidence offered and received in the court below. It can now be stated that on the basis of the record presented it appears the plaintiff was the only person who testified as a witness in the cause. Defendants fail to set forth her testimony in their abstract. Plaintiff remedies that oversight by a counter abstract wherein we find the following statement respecting her testimony:

"Helena Belle Cessna, the plaintiff herein, testified that she is the plaintiff in this action and the daughter of Marie T. Ray; that the name of Marie T. Ray before her marriage to W. O. Ray was Marie Lowell; that W. O. Ray never had any child or children; that Lydia A. Ray, who died in 1934, never had any child or children; that plaintiff is the daughter of Marie T. Ray by a former marriage, and the only child of Marie T. Ray; that Marie T. Ray died on May 25, 1953, and her estate was probated in the Probate Court of Mitchell County, Kansas, and that the property described in plaintiff's petition in this action was assigned to plaintiff. Witness recalls going with her attorney to the County Clerk's office and having the said real estate put on record in her name.

"That since her mother's death she has paid the taxes, collected the rents and that no one else has ever claimed to own either one of these pieces of land, either the farm or the town property; that prior to her mother's death, her mother was in possession of both these tracts of real estate under a claim of ownership; that she never had heard of anyone else claiming to own the farm property after the death of W. O. Ray; never heard of any one other than her mother claiming to own the town property after October 20, 1938; that prior to that time W. O. Ray claimed to own the farm and paid the taxes and received the rents from it until his death."

At the close of plaintiff's case defendants demurred to her evidence on the ground it failed to establish a cause of action. When this demurrer was overruled they announced they had no evidence to offer and stood upon their demurrer. Judgment was then ren-

dered against them quieting the plaintiff's title to the involved real estate. Thereafter they filed a motion for a new trial on grounds the judgment was in whole or in part contrary to the evidence and the trial court had abused its discretion. When this motion was overruled they perfected the instant appeal wherein they complain of the judgment, the overruling of their demurrer to plaintiff's evidence, the overruling of their motion for a new trial, and other pretrial rulings.

The only pretrial rulings complained of by appellants, who are alleged to be living heirs at law of the persons specifically named in the second paragraph of Lydia's will as remaindermen, are that the trial court erred in failing to sustain demurrers lodged against appellee's petition and amended petition on the ground they failed to state a cause of action. We have examined such pleadings and have no difficulty in concluding that, under our statute (G. S. 1949, 60-1801), providing that an action may be brought by any person in possession of real estate against any person claiming an estate or interest therein adverse to him for the purpose of determining such adverse estate or interest, they were sufficient to withstand the attack thus made. The petition in an action to quiet title, contrary to appellants' position, states a cause of action when—as here—it alleges the material facts necessary to bring the case within the terms of the statute. Moreover an allegation of ownership in fee admits proof of any title, including that acquired by adverse possession (44 Am. Jur., Quieting Title, 64 § 79).

In the face of the record there can be no question but what appellee and her predecessors in interest have been in the open and exclusive possession and control of the involved real estate since January 3, 1936, under claim of ownership and title thereto as against the world, including the appellants and the persons from whom they claimed to have obtained an interest in such land. Indeed appellants make no claim to the contrary. In essence their claim the trial court erred in quieting appellee's title is founded upon three propositions. First, that prior to July 1, 1939, the effective date of our present probate code, probate courts had no power or authority to adjudicate title to real estate. Second, that under Lydia's will W. O. Ray took a life estate and their predecessors in interest, as remaindermen, the fee in the involved real estate. Third, that the fifteen years statute of limitations (G. S. 1949, 60-304 [Fourth] ) did not commence to run against their remaindermen

until the termination of the life estate, hence, since W. O. Ray did not die until August 9, 1942, appellee and her predecessors in interest cannot be held to have acquired title to such real estate by adverse possession at the time of the commencement of this action on September 5, 1954.

For all purposes essential to the disposition of this appeal it may be assumed that appellants' position with respect to the first two propositions on which they rely is sound. So far as the third is concerned it may be assumed also that the January 3, 1936, decree of the probate court, as heretofore quoted in this opinion, did not have the legal effect of transferring full and complete title in the involved real estate to W. O. Ray or extinguishing the title of appellants' predecessors in interest therein. Even so it does not follow their position with respect to the third proposition can be upheld.

At the outset it should be stated that we are not in accord with a contention advanced by the appellants that a life tenant can never acquire title to real estate by possession adverse to remaindermen. See 31 C. J. S., Estates, 83 § 66, which reads:

"It is sometimes broadly stated that a life tenant cannot, by his declaration, acts, or claims of a greater or different estate, make it adverse so as to enable himself or those claiming under him to invoke the statute of limitations. On the other hand, it has been asserted that the rule supposes an uninterrupted continuation of the relation of life tenant and remainderman, and that it does not apply where there has been an ouster and disseizin by the life tenant, or one claiming through him, under claim of right or color of title, followed by adverse possession for the statutory period. Thus, according to some of the authorities, the possession of a life tenant may become hostile and adverse to that of the remainderman or reversioner when knowledge is clearly conveyed to him that the person in possession claims entire title in his own right, adverse and hostile to any claims or interest in the land by the remainderman or the reversioner or others claiming through either of them."

See, also, 1 Am. Jur., Adverse Possession, 861 § 121, where it is said:

"It seems, however, that where the life tenant acquires an independent title, or even a color of title, his subsequent possession thereunder may be adverse to the remainderman, and so the holding over of a tenant for the life of another may become adverse to the cestui que vie. and it has been held that adverse possession may be acquired by the life tenant where the knowledge is clearly brought home to the remainderman that the former claims the entire estate in his own right, adverse and hostile to any claim or interest in the land by the remainderman or others claiming under him."

Contrary to appellants' contention on the foregoing point, and mindful of the general principle that possession of a life tenant is ordinarily not adverse to the remainderman or reversioner, it is our view that, under the rule above stated, when W. O. Ray took over the open, notorious, exclusive and hostile possession of the involved real estate, under the terms of the probate decree of January 3, 1936, such decree, unless it was wholly void and of no force and effect whatsoever, must be regarded as commencing operation of the fifteen year statute and giving notice to the world, including appellants and their predecessors in interest, that from and after such date he was holding such real estate by adverse possession as against any interests they might have therein under and by virtue of Lydia's will.

We now direct our attention to the question whether the probate court decree of final settlement was wholly void and therefore of no force and effect. In approaching the question it must be kept in mind that such decree was one of final settlement of an estate; that it was made pursuant to a notice of final settlement which, contrary to appellants' contentions, gave notice to all persons interested in the estate, including their predecessors in interest (See *Scruggs v. Scruggs*, 69 Kan. 487, 77 Pac. 269), through whom they are now claiming an interest therein; that it was made in conformity with the then existing statute (G. S. 1935, 22-904) which not only provided but expressly required that the court rendering it should determine who were the heirs, devisees and legatees of Lydia A. Ray, deceased, and enter a record thereof upon its journal; that it was made under a statute (G. S. 1935, 22-1101) expressly providing for appeals from decisions of the probate court to the district court under divers conditions and circumstances, including all other cases where there shall be a final decision of any matter arising under the jurisdiction of the probate court; and that no appeal from the decree was ever taken by any one. It must also be remembered that such decree was made at a time when the constitution (article 3 § 8) and the statute (G. S. 1935, 20-1101) of our state provided in substance that probate courts are courts of record and shall have and exercise the jurisdiction and authority provided by law respecting the settlement of the estates of deceased persons.

In the face of what has been pointed out in the preceding paragraph and other pertinent facts set forth at length in the opinion we feel impelled to hold the decree of final settlement in question was

not void for lack of jurisdiction and therefore should be given the force and effect heretofore indicated. Of a certainty, under our decisions, it is of such nature it cannot be successfully attacked in its entirety. Long ago in *Shoemaker v. Brown*, 10 Kan. 383, this court indicated its view that a final settlement made in connection with the closing up of an estate could not be impeached collaterally, except for fraud in obtaining the same, when it said:

". . . In this state probate courts are courts of record, and possess full, ample, and complete jurisdiction of all matters connected with the settlement of the estates of deceased persons. *Const. art 3, § 8; Gen. St.* 313, § 1, p. 429, c. 37. All their allowances of demands against the estate, all their settlements with administrators, indeed, all their official acts requiring the exercise of judgment and discretion, are, in their nature, judicial determinations, and are binding upon all the property of the estate, and upon any interest in such property that any person may have as heir, devisee, or legatee. . . ." (p. 393.)

More recently in *Middendorf v. Kansas Power & Light Co.*, 166 Kan. 610, 203 P. 2d 156, in perhaps our latest decision dealing directly with the force and effect to be given a final settlement under the provisions of our probate code as it existed prior to July 1, 1939, we held:

"A final settlement of an estate made by the probate court pursuant to the probate code is a final order binding upon all persons interested in the estate, and the order of final settlement, if not appealed from, becomes final and conclusive as against collateral attack." (Syl. ¶ 2)

For just a few of our other decisions wherein views of like import are expressed see *Musick v. Beebe, Adm'r*, 17 Kan. 47; *Proctor v. Dicklow*, 57 Kan. 119, 45 Pac. 86; *Lewis v. Woodrum*, 76 Kan. 384, 92 Pac. 306; *Brown v. Schreckler*, 151 Kan. 724, 100 P. 2d 471; *In re Estate of Rothrock*, 173 Kan. 717, 252 P. 2d 598.

Having determined the decree of final settlement made by the probate court in closing the Lydia A. Ray estate was not void we adhere to the view expressed earlier in this opinion as to its force and effect. The result, since it cannot be successfully disputed that appellee and her predecessors in interest have held the open, notorious, exclusive and hostile possession of the involved real estate under claim of right and color of title for more than fifteen years prior to the commencement of this action, compels the conclusion, and we hold, that the trial court did not err in the rendition of its judgment quieting title to such real estate on the basis the evidence disclosed appellee had acquired title thereto by ad-

verse possession. The fact, as appellants point out, that the executor of Lydia A. Ray's estate obtained an order from the Inheritance Tax Commission of the state reciting that no inheritance tax was levied against her estate because W. O. Ray had been given a life estate therein and the remainder was subject to contingencies set out in her will does not warrant a contrary decision. Under our decisions even an erroneous judgment may become, in whole or in part, a finality. See, e. g., *Hoover v. Roberts*, 146 Kan. 785, 74 P. 2d 152.

What has been heretofore stated and held respecting the propriety of the trial court's judgment suffices to demonstrate that its action in overruling the demurrer to the petition and in denying the motion for new trial was proper and cannot be disturbed.

In conclusion it should be stated that numerous other contentions advanced by counsel for the parties in support of their respective positions have been considered but are not regarded as important enough to require express treatment in this opinion or sufficiently persuasive to change the views therein expressed.

The judgment is affirmed.