No. 57,890

In the Matter of the Estate of LESTER C. NEWLAND, Deceased.

(730 P.2d 351)

Opinion filed December 5, 1986.

*Thomas R. Oglevie,* of Goodland, argued the cause and was on the brief for petitioner/appellant Charles Lester Newland, Jr.

*Jerry D. Fairbanks,* of Fairbanks & Rigor, P.A., of Goodland, argued the cause and was on the brief for administrator/ appellee First National Bank of Goodland.

The opinion of the court was delivered by

HERD, J.: This is an action by the appellant, Charles Lester Newland, Jr., (Charles Newland), to set aside the journal entry of final settlement in the estate of his father, Lester Charles Newland (Lester Newland), deceased.

Lester Newland died intestate on November 8, 1982, a resident of Wallace County, Kansas. Some forty years before, on September 19, 1942, he married Mildred Florence Herbert in Pepperell, Massachusetts. As a result of this marriage a son, Lester Charles Newland, Jr., was born on January 17, 1944. The son, who is the appellant in this action, later used the name "Charles Lester Newland, Jr." Not long after his son's birth, Lester Newland displayed signs of violence and his wife feared for the life of herself and her son; consequently, Mildred left her husband when the son was approximately nine months old. Lester and Mildred were divorced in July of 1945. From that time on, Lester Newland did not see his son again.

Approximately twenty years before his death, Lester Newland was adjudicated an incapacitated person and his father was appointed as his conservator. After the father's death, Lester's mother became his conservator. Following her death, Jesse Linder, a local attorney, was appointed as conservator. Linder served in this capacity until Newland's death.

At the time of his death, Lester Newland was survived by his son and one brother and four sisters. The brother and sisters had never met the son and had little knowledge of his whereabouts. Upon the death of Lester Newland, Clifford A. Newland, decedent's brother, filed a petition to probate the estate, stating that the decedent's only known heir was his son whose whereabouts were unknown and praying that he (Clifford Newland) be appointed administrator of his brother's estate. The decedent's four

sisters then filed an answer, requesting the appointment of an independent administrator. On January 10, 1983, District Magistrate Judge Logan Dobbs ruled in favor of the objecting heirs and appointed the First National Bank in Goodland as administrator. In its order, the court also found:

"To this date due diligence has been exercised in the search for names, ages, relationships, and residence and addresses of heirs. Additional information will have to be obtained with respect to a child·named Lester Charles Newland, Jr."

On March 2, 1983, the Bank filed an inventory and valuation of the estate, showing its total appraised value to be $106,707.95. The estate was made up almost entirely of stocks, bonds, and savings.

The Bank, as administrator, took a number of steps to locate the decedent's son, none of which proved successful. Ultimately, the Bank petitioned the court for final settlement alleging Lester Charles Newland, Jr., was the only child of the decedent and stating a diligent search for him had been made, but he could not be found. The petition further alleged the brother and sisters of the decedent were his only heirs.

The magistrate judge entered a Journal Entry of Final Settlement on March 19, 1984, assigning and distributing the estate to the brother and sisters of the decedent.

Approximately two months after the journal entry was filed, the decedent's son appeared. Jesse Linder, as attorney for the son, filed a petition seeking to reopen the estate. Mr. Linder was later replaced by Thomas Oglevie as counsel for the appellant. Ultimately, the matter was submitted to the district court, by agreement of counsel, on briefs, with the exception of an evidentiary hearing on the identity of Charles Lester Newland, Jr. At that hearing, which took place on August 6, 1984, the district judge found the petitioner, Charles Lester Newland, Jr., to be the son of Lester Charles Newland, Sr.

After examining the briefs and record, the district court ruled in favor of the administrator and against the petitioner. The Court of Appeals affirmed in an unpublished *per curiam* decision. We granted review.

Additional facts will be considered and discussed where relevant.

Prior to considering the numerous allegations of error raised

by the appellant, we first note the basis upon which the district court judgment is attacked.

K.S.A. 59-2213 provides that the court shall have control of its orders, judgments, and decrees for thirty days after the rendition thereof. Thereafter, such orders, judgments, and decrees may be modified as provided by K.S.A. 60-260(b) of the Code of Civil Procedure.

Since the appellant did not challenge the district court's judgment until after more than thirty days had gone by, he now relies on K.S.A. 60-260(b). That statute provides:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60-259 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subsection (b) does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in K.S.A. 60-309 or to set aside a judgment for fraud upon the court. Writs of *coram nobis, coram vobis, audita querela,* and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in this article or by an independent action."

In seeking to overturn the judgment, appellant relies primarily upon sections (1), (4), and (6) of K.S.A. 60-260(b). Before considering the application of these sections to the present case, we first consider the appellee's contention that a final judgment in a probate case, if not appealed from, is not subject to collateral attack, except for fraud. *Cessna v. Carroll,* 178 Kan. 650, 657, 290 P.2d 803 (1955). *Middendorf v. Kansas Power & Light Co.,* 166 Kan. 610, Syl. ¶ 2, 203 P.2d 156 (1949). Appellee suggests that the motion of appellant is a collateral attack and since there were no allegations of fraud, the motion must fail.

We do not disagree with the general rule regarding collateral attacks set forth by the appellee. Rather, we hold that the attack made upon the judgment by the appellant in this case is a direct

attack, rather than a collateral attack. The distinction between direct and collateral attacks is simply stated at 46 Am. Jur. 2d, Judgments § 631, p. 790:

"The distinction between a direct and collateral attack upon a judgment is sometimes based upon the purpose of the proceeding or action in which the attack is made. Under this distinction, an attack is regarded as direct where the proceeding in which it is made is brought for the purpose of impeaching or overturning the judgment, and as collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment. Stated affirmatively, this rule is that a collateral attack upon a judgment is an attack made by or in an action or proceeding that has an independent purpose other than the impeaching or overturning of the judgment, although impeaching or overturning the judgment may be necessary to the success of the action. Under this rule, an attack is regarded as collateral where the regularity of the judgment is presented as an incidental issue."

The attack upon the judgment made by the appellant in this case is part of the original action and was brought for the purpose of overturning the judgment, and as such it constitutes a direct attack. Accordingly, the appellant has properly relied upon K.S.A. 60-260(b), which authorizes a direct attack upon a judgment when certain specified circumstances provide a basis for relief.

Appellant first suggests the judgment should be overturned under K.S.A. 60-260(b)(4) as void for lack of jurisdiction. Specifically, appellant argues the magistrate judge lacked jurisdiction to order a final settlement because an accounting was not on file with the court, as required by K.S.A. 59-2247.

The Petition for Final Settlement was filed with the magistrate judge on February 17, 1984. Although the petition stated that "a full and true account of Administrator's receipts and disbursements is filed herein," no final accounting was filed with the court. However, a final accounting was mailed to the decedent's brother and sisters, to which they offered no objection. The record does not show the date of such mailing.

Appellant argues that without an accounting on file, the court lacked jurisdiction to hold a hearing on final settlement. As authority for this argument, appellant relies primarily upon K.S.A. 59-2247, which provides:

"The petition of an executor or an administrator for a final settlement and accounting, and a determination of the persons entitled to the estate of a decedent, shall, in addition to other requirements, contain:

"(1) A statement of the account;

"(2) the names, residences, and addresses of the heirs, devisees, and legatees;
"(3) a description of the real estate and the interest of the decedent therein at the time of his or her death; and
"(4) the nature and character of the respective claims of the heirs, devisees, and legatees of the decedent.
"Notice of the hearing thereof shall be given pursuant to K.S.A. 59-2209." (Emphasis added.)

Appellant also cites K.S.A. 59-2249, which provides that the administrator may be examined relative to the account at the final hearing and K.S.A. 59-2213, which provides that no judgment shall be rendered in a probate proceeding without proof. Appellant argues these statutes, when read together, mandate a finding that the court was without jurisdiction to order a final settlement.

Appellee administrator contends the filing of an accounting is a matter of procedure only and a failure to do so does not disturb the jurisdiction of the court. The bank cites K.S.A. 59-2201, which provides:

"Every application in a probate proceeding, unless made during a hearing or trial, shall be by petition signed and verified by or on behalf of the petitioner. No defect in form shall impair substantial rights; and no defect in the statement of jurisdictional facts actually existing shall invalidate any proceedings."

Thus, the administrator argues jurisdiction was invoked pursuant to K.S.A. 59-2201 when a proper petition to open the estate was filed, and the matter was set for hearing and notice given. Further, the administrator contends K.S.A. 59-2247, which is relied upon by the appellant, contemplates an alternative procedure in lieu of a final accounting. Specifically, the administrator suggests it is permissible to "waive" a formal detailed accounting if the heirs are informed of the accounts of the estate in a timely and thorough fashion. It should be pointed out that no waivers were filed in this case.

The Court of Appeals ruled that the district court of Wallace County had subject matter jurisdiction of this estate in the first instance and the court could not thereafter lose such jurisdiction. We agree with the Court of Appeals and hold that the failure to file an accounting, while irregular and improper, did not rise to the level of depriving the court of jurisdiction to order a final settlement of the estate.

Appellant next contends that when he could not be found by the administrator, the court should have either paid the net

estate to the county treasurer as unclaimed money pursuant to K.S.A. 59-1508, appointed a trustee for the absent heir as provided in K.S.A. 59-2702, or made a finding of death based on the presumption of death of the missing heir. K.S.A. 59-1508 provides:

"If any part of the money on hand has not been paid over *because the person entitled thereto cannot be found* or refuses to accept the same, or for any other good and sufficient reason, the district court *may* order the executor or administrator to pay the same to the county treasurer for the same disposition as is provided by K.S.A. 20-2801 for moneys received from forfeitures, except that if the person to whom said sum is ordered to be paid refuses to accept the same when it is tendered such person by the executor or administrator, the court may, either before or after the sum has been deposited, order the same to be paid and distributed to those who would be entitled thereto had the refusing legatee or distributee not been entitled to it.

"Upon application to the district court within ten (10) years after such deposit, and upon notice to the county attorney and the county treasurer, the court may order the county treasurer to pay the same to the person entitled thereto. No interest shall be allowed or paid thereon, and if the deposit is not claimed within such time no recovery thereof can be had." (Emphasis added.)

K.S.A. 59-2702 is part of an act concerning estates of absentees (K.S.A. 59-2701 *et seq.*) and provides as follows:

"A trustee may be appointed for the estate of any such absentee to administer the same until such time as he or she returns or is found to be dead in accordance with the subsequent provisions hereof. A petition for the appointment of such trustee may be filed by any person."

With respect to K.S.A. 59-1508, the magistrate judge ruled:

"It seems to me that the statute does not contemplate paying the money to the County Treasurer to be held for ten years if there are any heirs that can be found. I don't think there's any—I haven't found any law that tells me any differently than that. It would be a shame, of course, if we had to hold a hundred thousand dollars in the County Treasurer's Office and then the heirs who are the next one entitled to share are elderly and they all die in the meantime and here we've got a hundred thousand dollars setting there in the County Treasurer's Office that finally goes to the state or to the county. I think that would be an uncalled for happening. And that certainly could have happened in this particular case. So I can't believe that the intention of that statute is, regardless of whether you can find an heir or whether you can't, that it has to be paid into some public fund to be held for ten years to determine whether somebody's going to show up."

The Court of Appeals did not comment upon the trial court's reasoning but instead held the use of the word "may" in K.S.A. 59-1508 indicates that resort to this procedure in a probate case is discretionary with the district court. The court further held that

both K.S.A. 59-1508 and K.S.A. 59-2701 contemplate a situation where the missing heir is the only possible claimant to the estate.

Let us examine this issue. A good discussion of the legislature's intention in enacting K.S.A. 59-1508 can be found in *Ruppenthal v. Maag,* 153 Kan. 588, 113 P.2d 101 (1941). In *Ruppenthal,* the administrator of decedent's estate could not locate a daughter of decedent and pursuant to R.S. 1923, 22-932 (now K.S.A. 59-1508) paid her distributive share to the county treasurer. The county treasurer immediately paid this money to the various school districts of the county. Nine years later, a conservator was appointed for the daughter's estate even though no finding was ever made that the daughter or her descendants were dead. The conservator was appointed pursuant to statutory provisions concerning estates of absentees, G.S. 1935, 60-4001 to 60-4026 (1939 Supp.) (now K.S.A. 59-2701 *et seq.*). The conservator made a demand on the county treasurer for the payment of the daughter's distributive share to him, but the county officials refused to pay. The conservator then filed suit pursuant to what is now K.S.A. 59-1508, requesting that county officials be ordered to pay him the missing heir's share. His request was granted but the county did not comply and the conservator appealed, raising a number of issues. Only one of these issues is relevant to the present case: Whether G.S. 1935, 60-4001 to 60-4026 (1939 Supp.) (now K.S.A. 59-2701 *et seq.*) applied to the case or whether this case was controlled by K.S.A. 59-1508.

After thoroughly examining the legislative history of K.S.A. 59-1508, the court reasoned as follows:

"G.S. 1939 Supp., 60-4001 to 60-4026, inclusive, cover a distinct field which was not dealt with by any previous legislature, while section 59-1508 covers a field to which the very first legislature in this state gave attention and which has been the subject of legislation as a distinct subject from time to time. The end sought which was to enable the person entitled to an unclaimed distributee's share to appear and prove that he was entitled to that share is provided for in section 59-1508 and has been ever since 1917. There was no remedy for that particular situation which would have caused the legislature to enact 60-4001 to 60-4026. *The purpose of that statute [the Estates of Absentees Act] was undoubtedly to provide a procedure in cases where money, or other personal property, or real estate, were being wasted or lost through lack of someone to take care of it. Such is not the case here. This money is in good hands and is as safely kept awaiting the appearance of the person entitled to it as though it were in the hands of a conservator. The two statutes deal with separate things altogether.* We have therefore concluded that 60-4001 to 60-4026, inclusive, does not apply to cases such as the one we have here where a distributee's share of an estate was paid to

the county treasurer because the person who was entitled to it could not be found." (Emphasis added.) 153 Kan. at 595-96.

See also *In re Estate of Dinsmoor,* 159 Kan. 76, 152 P.2d 58 (1944) and 2 Bartlett, Kansas Probate Law and Practice § 888 (rev. ed. 1953).

We draw two conclusions from the *Ruppenthal* case and cited commentary. First, in the present case, appellant's contention that *either* K.S.A. 59-1508 or K.S.A. 59-2702 should have been utilized by the court, is incorrect. While K.S.A. 59-2702 applies to probating the estate of a missing person which is being wasted, the purpose of K.S.A. 59-1508 is to enable a person entitled to an unclaimed distributee's share to appear and prove he or she is entitled to that share. Such is the situation in the present case. As in *Ruppenthal,* this is *not* a case where money or other personal property, or real estate, were being wasted or lost for lack of someone to take care of it; here we have an ongoing probate proceeding, thus, K.S.A. 59-2702 does not apply.

A second conclusion to be drawn from *Ruppenthal* is that K.S.A. 59-1508 was available as an optional remedy in the present case. However, the use of the procedure set out in K.S.A. 59-1508 would have been premature here since, in order for the statute to be utilized, there must first have been a determination that the person is entitled to the property on hand and that he or she cannot be found. Here, there was no finding that Charles Lester Newland was entitled to the money.

Despite the fact that K.S.A. 59-1508 was an available remedy in this case, the court's failure to utilize that statute was not error. We hold that the use of the word "may" in K.S.A. 59-1508 reflects the options the court has where an heir of a decedent is missing at the time of final settlement to (1) hold the estate open for an additional time to find the person entitled to the money; or (2) utilize the provisions of K.S.A. 59-1508.

This brings us to the final issue: Was the district court correct in making a determination that the heirs at law of Lester Newland were the decedent's brother and four sisters with no proof or finding of Charles Newland's death? Such a finding of death is essential because under K.S.A. 59-506, Charles Newland, if living, is acknowledged to be the sole heir of Lester Newland. K.S.A. 59-506 provides:

"If the decedent leaves a child, or children, or issue of a previously deceased child or children, and no spouse, all his or her property shall pass to the surviving

child, or in equal shares to the surviving children and the living issue, if any, of a previously deceased child, but such issue shall collectively take only the share their parent would have taken had such parent been living."

Under this statute, Charles Newland's right to the distribution of his father's personal estate can be extinguished only by renunciation or upon a finding that Charles Newland preceded his father in death and that he died without issue. Obviously, appellant did not renounce his interest in the estate, nor was a finding of death made in the present case.

Instead, the district court reviewed the facts relating to the search made for the decedent's son, and determined that due diligence was exercised by the administrator in the search. The court noted that the administrator had inquired of the decedent's brothers and sisters; checked the records of Wallace County; contacted the social security administration in Colby; and hired a private investigator from Phoenix, Arizona, to try and locate the son. These efforts all proved unsuccessful. The district court then treated the finding of due diligence as a determination that Charles Newland preceded his father in death and died without issue.

The question of whether the administrator exercised due diligence pertains to notice to heirs, not to a determination of death and heirship. See, e.g., *In re Estate of Barnes*, 218 Kan. 275, 543 P.2d 1004 (1975). Since no proof was offered that Charles Newland preceded his father in death and died without issue, the court's determination of heirship was not supported by any evidence. This is apparent from the face of the journal entry of final settlement.

The administrator cites *Green v. Royal Neighbors of America*, 146 Kan. 571, 73 P.2d 1 (1937), and argues that after a period of seven years' absence, a person's death may be presumed. In *Green*, this court held that "seven years' unexplained absence or disappearance, where the person concerned has been unheard of by those who would be likely to do so, together with a proper showing of diligent but fruitless inquiry concerning him, will suffice as prima facie proof of death to take the issue of fact to the jury or to the court as trier of disputed fact." 146 Kan. at 577.

*Green* does not stand for the proposition that the presumption of death is a self-executing presumption. Rather, the presumption of death is a rebuttable presumption which must be asserted after proof of the foundation facts in a hearing for that purpose. No hearing was ever held for the purpose of determination of the appellant's death, either as a part of the probate proceeding or as an independent action provided for in K.S.A. 59-2704. Instead, the Journal Entry of Final Settlement simply states, "The names and residences of the heirs, who are entitled to [the] Estate, under the laws of distribution of the State of Kansas, who can be ascertained with due diligence are as follows . . . ." The court then listed the names and addresses of the decedent's brother and four sisters. This determination of heirship violated Kansas law of intestate succession which provides that where the decedent leaves a child and no spouse, the child shall receive the entire estate. K.S.A. 59-506. The court's action amounted to an unlawful taking of Charles Newland's property. Even though the technical legal title to Lester Newland's personal estate vested in the administrator in trust for the payment of debts and costs of administration, Charles Newland, as his sole heir, had a vested right to the distribution of the entire estate, subject to the payment of debts and costs of administration upon the death of Lester Newland, unless he renounced or predeceased his father without issue. Neither occurred. See 31 Am. Jur. 2d, Executors and Administrators § 244. We hold the court's action in determining heirship was error.

Let us now determine whether the trial court erred in refusing to grant relief under K.S.A. 60-260, when it was apparent the determination of heirship was erroneous.

Appellant suggests the judgment should be overturned under K.S.A. 60-260(b)(1) because he had no knowledge of the death of his father until he was notified of such by Jesse Linder. K.S.A. 60-260(b)(1) allows relief from a judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." None of these reasons are applicable here. Charles Newland was merely unaware of his father's death and the estate proceedings. That, of itself, is not such a mistake as to justify relief from a judgment where proper notice was given. Moreover, the court was not unaware of the existence of Charles Newland. It did not inadvertently or mistakenly fail to name him as the sole heir of Lester

Newland. Rather, the court failed to require proof in determining heirship. K.S.A. 60-260(b)(1) does not afford relief for such errors of law.

We hold, however, that under K.S.A. 60-260(b)(6), relief is afforded from a judgment erroneous on its face entered in violation of law. The statute provides:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment."

We recently considered K.S.A. 60-260(b)(6) in *Wirt v. Esrey*, 233 Kan. 300, 311, 662 P.2d 1238 (1983). There, we determined that this rule is to be liberally construed "to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts." Here the scales of justice tilt toward the heir who was unlawfully divested of his property.

We hold the district court abused its discretion in denying appellant's motion to set aside the judgment of final settlement.

The judgment is reversed and remanded to the district court with directions to set aside the journal entry of final settlement and to find Charles Newland to be the sole heir of Lester Newland, deceased.