82 F.3d 338
 Charles Lester NEWLAND, a/k/a Charles L. Newland, Plaintiff-Appellant,
v.
Clifford A. NEWLAND, Defendant-Cross Claimant,
v.
The FIRST NATIONAL BANK IN GOODLAND, Goodland, Kansas;
Jerry D. Fairbanks, Defendants-Cross Claim
Defendants-Appellees.
 No. 94-3327.
 United States Court of Appeals,
Tenth Circuit.
 April 19, 1996.
 
 Appeal from the United States District Court for the District of Kansas; Patrick F. Kelly, Judge. No. 91-1443-PFK.
 Roger M. Theis of Hinkle, Eberhart & Elkouri, Wichita, Kansas, (John Terry Moore, with him on the brief) for Plaintiff/Appellant.
 Donald F. Hoffman of Dreiling, Bieker & Hoffman, Hays, Kansas, for Defendant/Cross Claim Defendant/Appellee The First National Bank in Goodland.
 Steven C. Day of Woodard, Blaylock, Hernandez, Roth & Day, Wichita, Kansas, for Defendant/Cross Claim Defendant/Appellee Jerry D. Fairbanks.
 Before EBEL, McKAY, and HENRY, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 Appellant Charles L. Newland filed this diversity action against the former administrator of his deceased father's estate and the administrator's attorney ("Appellees"), asserting claims for breach of trust, gross negligence, conversion, fraud, waste, negligence, breach of fiduciary duty, and unjust enrichment. The district court granted summary judgment in favor of the Appellees on the ground, inter alia, that Appellant's claims were barred by the applicable statutes of limitations. Alternatively, the district court granted summary judgment in favor of the Appellees on the merits. Because we agree that Appellant's claims are barred by the statute of limitations, we affirm the judgment of the district court on that ground without reaching the merits of Appellant's claims.
 
 I.
 
 2
 Lester Newland ("Lester") died intestate in Kansas on November 8, 1982, without a surviving spouse but with four surviving sisters and one surviving brother. After Lester's death, his sisters filed an answer in the probate proceeding stating that Lester's only son, Charles L. Newland ("Charles"), who had not been in touch with his father or family for 20 years, could not be found. The court appointed Appellee The First National Bank in Goodland ("Bank") as administrator of the estate. Appellee Jerry D. Fairbanks ("Fairbanks") represented the Bank as attorney to the administrator. The Bank was removed as administrator of the estate on May 12, 1992 and at that time Fairbanks was permitted to withdraw as attorney of record for the Bank.
 
 
 3
 Appellees contend they made diligent efforts to find Charles before distributing the estate. Fairbanks at one point wrote to the judge administering the probate estate that Appellees could not determine whether Charles had survived a car accident, and that Appellees had hired private investigators to investigate the matter through the Social Security Administration. Having failed to locate the missing son, Appellees concluded that Charles was presumed dead under a specific provision of the Kansas probate code, Kan. Stat. Ann. § 59-2704,[1] because they considered this provision to be self-executing. Appellees thus prepared a petition for final settlement stating that Lester's siblings were the only surviving heirs who were known or could be ascertained with reasonable diligence, and requesting distribution to the siblings. On March 23, 1984, Lay Judge Logan Dobbs approved the journal entry of final settlement, which gave 100 percent of the estate after the payment of fees and costs to Lester's siblings.
 
 
 4
 As it turned out, however, the reports of Charles' death were greatly exaggerated. On May 22, 1984, after learning of his father's death and the distribution of the estate, Charles filed a motion in the state district court to set aside the final settlement. Appellees, however, did not seek recovery of the disbursed assets. The state district and appellate courts denied Charles' petition, but the Kansas Supreme Court granted the petition in In re Estate of Newland, 240 Kan. 249, 730 P.2d 351 (1986) ("Newland I "). Specifically, the court ruled that the presumption of death statute was not self-executing, and that the district court's decision "amounted to an unlawful taking of Charles Newland's property" absent a finding that Charles had predeceased his father without issue. Newland I, 730 P.2d at 359. Accordingly, the supreme court on December 5, 1986 directed the state district court to set aside the journal entry of final settlement and to find Charles to be Lester's sole heir. Id. 730 P.2d at 360.
 
 
 5
 Following the supreme court's decision, Appellees made no efforts toward redistributing the estate to Charles. Slightly more than three years later, on March 19, 1990, Charles filed a petition in state district court to compel the Bank to hold a final settlement hearing. The state district court granted Charles' petition and a hearing was scheduled for October 4, 1990. At the hearing, Appellees denied they had any obligation to redistribute the estate to Charles. The state district court later held that Charles was the sole heir of the estate, but refused to order the repayment of any funds which had been distributed. The Kansas Court of Appeals set aside this decision on August 23, 1991 and ordered the district court to conduct a hearing to restore Charles to the position he would have been in absent the erroneous order of final settlement. In re Estate of Newland, --- Kan.App.2d ----, 815 P.2d 1133 (1991) ("Newland II "). So far as the record reveals, that matter is still unresolved in the state court.
 
 
 6
 Charles filed the present action on October 2, 1991 in the United States District Court for the District of Kansas, charging Appellees with breach of trust, gross negligence, conversion, fraud, waste, negligence, breach of fiduciary duty, and unjust enrichment. The district court, on August 24, 1994, held that "all claims advanced herein fail on the merits, are barred by the statute of limitations, or both" and granted summary judgment to Appellees. Charles now appeals.
 
 II.
 
 7
 We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). Universal Money Ctrs., Inc. v. AT & T, 22 F.3d 1527, 1529 (10th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Universal, 22 F.3d at 1529 (quoting Fed.R.Civ.P. 56(c)).
 
 
 8
 The district court held that because Charles' complaint was filed on October 2, 1991--more than seven years after both the final settlement of the estate on March 23, 1984, and Charles' entry into the probate proceedings by filing the petition to set aside the final settlement on May 22, 1984--the present action was barred by the various Kansas statute of limitations, including Kan. Stat. Ann. § 60-514(c) (one-year statute of limitations for actions upon statutory penalties), Kan. Stat. Ann. § 60-513(a) (two-year statute of limitations for taking or detaining personal property), and Kan. Stat. Ann. § 60-512 (three-year statute of limitations for claims based on a liability created by statute other than statutory penalties). On appeal, Charles alleges two defects in the district court's statute of limitations analysis. First, he contends the district court's ruling violates the law of the case doctrine; second, he argues that the statute of limitations had not expired on his tort claims because Kansas law provides that the limitations period for certain tort actions is tolled during the pendency of any underlying legal proceedings. We find both of these contentions lacking in merit.[2]
 
 A.
 
 9
 Charles first argues that the federal district court disregarded the law of the case by refusing to obey the Kansas Court of Appeals' decision in Newland II, which ordered the state district court to conduct a hearing to take whatever steps are necessary to recover as much of Charles' inheritance as remains recoverable. Under Kansas law, matters decided on appeal constitute the law of the case governing future proceedings. Fleming v. Campbell, 148 Kan. 516, 83 P.2d 708, 709 (1938). When a case has been reversed and remanded, a Kansas trial court must proceed to carry out the mandate of the appellate court and has no authority to consider other matters. Wheeler Kelly Hagny Trust Co. v. Ellis Singleton Bldg. Co., 160 Kan. 605, 164 P.2d 143, 146 (1945). Thus, in Charles' view, a Kansas trial court would have been precluded from considering the timeliness of this action because it was required to honor the Court of Appeals' judgment "by limiting its focus in further proceedings to the issue of responsibility for the taking so that plaintiff would receive 'full and complete relief.' " Br. of Appellant at 22. Charles takes this analysis one step further by arguing that the federal district court was also precluded from deciding the statute of limitations issue because a federal court sitting in diversity is "in effect, only another court of the State," Guaranty Trust Co. of New York v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945), and thus must apply state law so as to obtain the same result that would be reached in state court, Perlmutter v. United States Gypsum Co., 4 F.3d 864, 869 (10th Cir.1993).
 
 
 10
 We conclude that the law of the case doctrine has no application here because the present action is a separate lawsuit involving separate issues and an additional defendant. The Kansas Supreme Court has held that the law of the case doctrine applies only within the same proceeding and only with regard to questions involved and decided in the first appeal. Miller v. Zep Mfg. Co., 249 Kan. 34, 815 P.2d 506, 519 (1991). Here, the federal tort action is not the same case as the state probate proceeding. Moreover, the issues are not the same. The state cause of action before the court of appeals in Newland II involved a probate proceeding and issues concerning the proper administration and distribution of an intestate estate.[3] By contrast, the present federal action raises tort claims involving new claims of recovery not presented in the state probate proceeding.
 
 
 11
 Finally, the Kansas Court of Appeals decision in Newland II did not address the applicability of the statute of limitations to Charles' present tort action. Thus, even if the law of the case doctrine were applicable, it would not control the application of the statute of limitations to this tort action. See Guidry v. Sheet Metal Workers Int'l Ass'n Local 9, 10 F.3d 700, 705 (10th Cir.1993) (holding that the law of the case doctrine applies only to those issues which have been decided explicitly or by necessary implication in the earlier appeal), modified on reh'g en banc, 39 F.3d 1078 (10th Cir.1994), cert. denied, --- U.S. ----, 115 S. Ct 1691, 131 L.Ed.2d 556 (1995). We therefore conclude the district court did not violate the law of the case by granting Appellees summary judgment on the statute of limitations question.
 
 B.
 
 12
 The district court ruled that Charles' action was essentially a tort cause of action and was untimely under Kansas' various statutes of limitations for tort actions.[4] Kan. Stat. Ann. § 60-513(b) provides that certain tort actions
 
 
 13
 shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party....
 
 
 14
 The district court found that Charles' action accrued when he first appeared in the state probate proceedings in 1984:
 
 
 15
 [I]t is uncontroverted that [Charles] actively contemplated a negligence action against the defendants from the time of his first appearance in the probate proceedings, when the estate had been distributed to his father's siblings. Any alleged wrongful conduct, and any injury to the plaintiff, was reasonably apparent by that time.
 
 
 16
 Appellant App. at 1167.
 
 
 17
 Charles argues, however, that the statute of limitations for claims arising out of Appellees' failure to locate him and from Appellees' distribution of the estate to Lester's siblings was tolled during the underlying probate proceedings in Newland I and Newland II. To support his position, Charles directs our attention to Kansas law which provides that the statute of limitations in legal malpractice claims is tolled during the pendency of the underlying legal proceedings. See Pizel v. Zuspann, 247 Kan. 54, 795 P.2d 42, 55, modified, 247 Kan. 699, 803 P.2d 205 (Kan.1990). Under Charles' theory, therefore, the statute of limitations was tolled during both the Newland I and Newland II proceedings.
 
 
 18
 Appellees contend, however, that an exception to the tolling rule applies in the present case: under Kansas law, the statute of limitations does not toll during underlying litigation when "it is clear that the plaintiff ... has incurred injury and ... it is reasonably ascertainable that such injury was the result" of the defendant's actions. Dearborn Animal Clinic, P.A. v. Wilson, 248 Kan. 257, 806 P.2d 997, 1006 (1991). In Dearborn, plaintiffs argued that their former attorney was negligent in drafting an asset purchase agreement which created only an option for a third-party to purchase stock rather than an outright obligation to purchase the stock. The court held that despite ongoing litigation attempting to force the third-party to purchase the stock, the statute of limitations for the malpractice action ceased tolling when the plaintiffs stated in interrogatories that they knew the agreement created only an option for the stock, rather than a legal obligation to purchase the stock. Id. 806 P.2d at 1006-07. The court held that these interrogatories indicated that "the injury [suffered] as a result of [the] alleged malpractice ... was not only reasonably ascertainable but, in fact, had been ascertained by plaintiffs" at the time the interrogatory answers were signed. Id. 806 P.2d at 1007.
 
 
 19
 Appellees contend a similar result should obtain here. Specifically, Appellees argue that the Kansas Supreme Court's holding in Newland I on December 5, 1986--that the "determination of heirship violated Kansas law of intestate succession," 730 P.2d at 359--ceased the tolling of the statute of limitations because as of that time it was reasonably clear to Charles that his injuries resulted from Appellees' wrongful actions. We agree. Charles acknowledges that after the Kansas Supreme Court issued its mandate in Newland I, Appellees "took no action to implement the Supreme Court's directives." Br. of Appellant at 10. Indeed, Charles contends that "the Bank did not wish to pursue the siblings and indeed had never wanted to do so," and that "the Bank's inaction was motivated by its own self-interest since pursuit of the siblings could catalyze a deficiency judgment against it." Br. of Appellant at 11. Thus, immediately following the Newland I decision in December 1986, it was "reasonably ascertainable" that Charles' injury was a result of Appellees' negligence, and Charles therefore could have brought suit against Appellees for wrongfully distributing the estate to the siblings in the first place. Cf. Dearborn, 806 P.2d at 1006-07. Charles, however, did not file the present suit against Appellees until October 2, 1991, almost five years after Newland I. Accordingly, we hold that any claims by Charles that Fairbanks and the Bank acted negligently or fraudulently in attempting to locate Charles or in distributing the estate to Lester's siblings are barred by the two-year statute of limitations. See Kan. Stat. Ann. § 60-513(a). For the same reasons, Charles' claims for statutory damages and penalties are also barred by the applicable Kansas statutes of limitations. See Kan. Stat. Ann. §§ 60-512, -514(c).[5]
 
 III.
 
 20
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 This statute reads in relevant part as follows:
 An absentee shall be presumed to be dead for the purposes of this act if: (1) the absentee shall remain unheard from by those persons most likely to hear from such absentee for a period of not less that five years, and (2) one or more persons who had a bona fide motive for locating the absentee have conducted a diligent search for the absentee in all places where such absentee's presence could reasonably be expected.
 Kan. Stat. Ann. § 59-2704(a).
 
 
 [2]
 The Bank makes a brief argument that considerations of comity deprive the federal courts of jurisdiction to entertain Charles' claims. Relying on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Bank argues that state courts should be permitted to try estate cases without federal court interference. As a general proposition, we agree that federal courts must tread lightly to avoid " 'interfer[ing] with the probate proceedings or assum[ing] general jurisdiction of the probate or control of the property in the custody of the state court.' " Beren v. Ropfogel, 24 F.3d 1226, 1228 (10th Cir.1994) (quoting Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946)); see also Younger, 401 U.S. at 44, 91 S.Ct. at 750-51 (directing federal courts to exercise their jurisdiction "in ways that will not unduly interfere with the legitimate activities of the States."). Yet we see no potential interference, and thus no impediment to federal jurisdiction, where an independent tort claim which is otherwise cognizable in a state court of general jurisdiction is brought against the former administrator of an estate and its attorney. The Supreme Court has repeatedly emphasized that the federal courts are under a "virtually unflagging obligation ... to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Thus, we reject the Bank's argument that the district court lacked jurisdiction to entertain Charles' action
 
 
 [3]
 The issue in Newland II was whether the district court had erroneously refused to order redistribution of estate funds, despite finding Charles to be the sole heir. See Newland II, slip op. at 1 (stating the question on appeal to be "the proper interpretation of the [Newland I ] decision.... The appellant contends that the trial court failed to fully implement the opinion and mandate of the Supreme Court.")
 
 
 [4]
 See Kan. Stat. Ann. § 60-514(c) (one-year statute of limitations for actions upon statutory penalties); Kan. Stat. Ann. § 60-513(a) (two-year statute of limitations for taking or detaining personal property); Kan. Stat. Ann. § 60-512 (three-year statute of limitations for claims based on a liability created by statute other than statutory penalties)
 
 
 [5]
 By its terms, the accrual rule in section 513(b) applies only to the specific causes of action listed in section 513(a). See Kan. Stat. Ann. § 513(b). We need not decide whether a similar accrual rule would also govern the causes of action listed in sections 512 and 514(c), because under any reasonable accrual rule that might apply to the statutes of limitations set forth in sections 512 and 514(c), Charles' action was filed beyond the permissible time period